John **TARRANT**, Petitioner, Appellee,

v.

Joseph **PONTE**, et al.,
**Respondents, Appellants.**

No. 84–1392.

United States Court of Appeals,
First Circuit.

Argued Sept. 14, 1984.

Decided Jan. 4, 1985.

Linda G. Katz, Asst. Atty. Gen., Boston, Mass., with whom Francis X. Bellotti, Atty. Gen., Frederick W. Riley, and Barbara A.H. Smith, Asst. Attys. Gen., Boston, Mass., were on brief, for respondents, appellants.

Carol Donovan, Boston, Mass., with whom Robert Sheketoff, and Zalkind & Sheketoff, Boston, Mass., were on brief, for petitioner, appellee.

* Of the Federal Circuit, sitting by designation.

Before CAMPBELL, Chief Judge, COWEN,* Senior Circuit Judge, and BREYER, Circuit Judge.

LEVIN H. CAMPBELL, Chief Judge.

This is an appeal regarding habeas corpus relief granted in the United States District Court for the District of Massachusetts. Petitioner was convicted and sentenced in the Massachusetts Superior Court for, inter alia, two counts of armed robbery. The district court, 586 F.Supp 1369, set aside the conviction and sentence on one of these counts as violative of the double jeopardy clause of the fifth amendment, and the Commonwealth now appeals from that order.

The facts are as follows. On October 19, 1976, petitioner John Tarrant accosted Judith Van Sprewenburg as she was leaving the apartment house where she lived to go to work. He forced her, at knifepoint, to reenter the ground floor foyer of the building and there demanded money. She opened her purse and gave him approximately $13. Petitioner then, with knife still in hand, demanded to be taken to her apartment, which was on the second floor. Ms. Van Sprewenburg complied, unlocking the inner foyer door and leading petitioner upstairs to her apartment. Once inside, petitioner looked around the apartment, locked Ms. Van Sprewenburg in her bathroom, and took various personal effects before leaving.

Petitioner was arrested and was indicted by a Massachusetts grand jury for four different offenses based on the events of October 19. The indictments charged him with armed robbery of the $13, armed robbery of the personal effects taken from the apartment, armed assault in a dwelling, and unlawful confinement of another. Prior to trial, petitioner's counsel filed a motion to dismiss one of the armed robbery indictments on the ground that the armed robbery indictments were duplicitous. The Suffolk Superior Court denied the motion

and a jury found petitioner guilty on all four indictments.

On each of the armed robbery indictments and on the indictment charging armed assault in a dwelling petitioner was sentenced to ten to fifteen years' imprisonment, to be served concurrently. On the unlawful confinement conviction, petitioner was sentenced to five to ten years, to be served concurrently with the other three sentences.[1] Petitioner's convictions were affirmed by the Massachusetts Appeals Court, *Commonwealth v. Tarrant (I)*, 14 Mass.App.Ct. 1020, 442 N.E.2d 31 (1982), and the Massachusetts Supreme Judicial Court denied further appellate review, *Commonwealth v. Tarrant (I)*, 388 Mass. 1102 (1983).[2]

Petitioner sought a writ of habeas corpus in federal district court pursuant to 28 U.S.C. § 2254 alleging, among other things, that he was convicted twice for the same offense in violation of the fifth and fourteenth amendments. He contended that his forcible taking of the money in the foyer, and his subsequent stealing of other property in the victim's second floor apartment, constituted but one crime of armed robbery, and that his conviction on two indictments of armed robbery therefore constituted double punishment.[3] The case

was referred to a United States Magistrate who recommended that the petition be denied in its entirety. Petitioner filed timely objections to the report and recommendations.

After a non-evidentiary hearing, the United States District Court for the District of Massachusetts ordered that the conviction and sentence for armed robbery of the personal effects taken from the apartment be vacated but denied all other requested relief. The state custodian filed a timely notice of appeal from so much of the order as allowed the petition in part. It also sought and was granted a stay pending appeal of the order vacating the conviction and sentence.[4]

The central issue in this appeal is whether the district court had the authority to reject the state court's interpretation of state law and to decide that the incidents of October 19 constituted one offense of armed robbery for double jeopardy purposes.[5]

The Massachusetts Appeals Court held that the petitioner's convictions on the armed robbery indictments were not duplicitous. In so holding, the court rejected petitioner's argument that the Supreme Judicial Court's interpretation of the armed robbery statute, Mass.Gen.Laws ch. 265,

---

1. All four sentences were to be served after expiration of sentences that petitioner was then serving.

2. All parties agree that petitioner's claims have been exhausted in the state courts.

3. The double jeopardy clause of the fifth amendment provides three separate protections: "It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969) (footnotes omitted). Multiple punishment cases turn on whether the crimes in question are "the same offense" for double jeopardy purposes and come in two varieties. First, there are the so-called "double-description" cases, in which the issue is whether two statutes describe two separate offenses or are "merely different descriptions of the same offense." *Gore v. United States*, 357 U.S. 386, 392, 78 S.Ct. 1280, 1284, 2 L.Ed.2d 1405 (1958); *see also* Westen & Drubel, *Toward a General*

*Theory of Double Jeopardy*, 1978 Sup.Ct.Rev. 81, 111. Second, there are "unit of prosecution" cases, like the case at bar. Here, the problem is not that the same course of conduct is proscribed by more than one statute but that a defendant's continuing course of conduct is fragmented into more than one violation of a single statutory provision. *Id.; see Callanan v. United States*, 364 U.S. 587, 597, 81 S.Ct. 321, 327, 5 L.Ed.2d 312 (1961).

4. The district court denied petitioner's request for a certificate of probable cause to appeal the remainder of the order and this court also refused to permit that aspect of petitioner's appeal.

5. Respondent also would argue before us that the district court abused its discretion by failing to invoke the concurrent sentence doctrine. This argument was not raised below and it is too late to raise it now on appeal. *Johnston v. Holiday Inns, Inc.*, 595 F.2d 890, 894 (1st Cir. 1979).

§ 17,[6] in *Commonwealth v. Levia*, 385 Mass. 345, 431 N.E.2d 928 (1982), compelled the conclusion that the dual convictions had subjected petitioner to double punishment for the same offense.

In *Levia*, the Supreme Judicial Court held that a judge had properly imposed consecutive sentences on a defendant convicted of two indictments of armed robbery because, by placing two employees of a store in fear and taking from each victim in the same episode money belonging to the store, he had committed two offenses of armed robbery. The court stated that "[i]n light of the emphasis that the General Court and this court have placed on the assault element of the crime of robbery, we conclude that the 'offense' is against the person assaulted, and not against the entity that owns or possesses the property taken." *Id.* at 351, 431 N.E.2d at 931. Petitioner argues that the converse of the *Levia* court's reasoning compels the conclusion that he may be punished only for one armed robbery because there was only one victim assaulted, although two thefts occurred at different locations.

The Massachusetts Appeals Court rejected this reasoning, concluding "[t]here is nothing in *Commonwealth v. Levia* ... which requires the conclusion that the defendant's acts, first in the foyer and then in the victim's apartment, were discrete parts of a single robbery." *Tarrant (I)*, 14 Mass.App. at 1021, 442 N.E.2d at 33. The Appeals Court concluded that

Although the taking of the victim's money and property happened during a continuous period, the offenses occurred in two different places and under different circumstances. While no one but the defendant and the victim were in the foyer at the time of the robbery, the foyer, unlike the victim's apartment, was accessible to the public. The victim testified that she was afraid while she was in the foyer and that she became more frightened in her apartment. "The essence of robbery is the exertion of force, actual or constructive, against another in other to take personal property ... from the protection which the person of that other affords." *Commonwealth v. Weiner*, 255 Mass. 506, 509, 152 N.E. 359 (1926). *Commonwealth v. Levia*, 385 Mass. at 348, 431 N.E.2d 928. These two offenses are not "so closely related in fact as to constitute in substance but a single crime." *Commonwealth v. St. Pierre*, 377 Mass. 650, 662–663, 387 N.E.2d 1135 (1979).

14 Mass.App. at 1021, 442 N.E.2d at 33.

The district court, in evaluating petitioner's habeas challenge to the state court's conclusion, acknowledged that "[w]hether a particular course of conduct involves one or more distinct offenses under a statute is a matter of legislative choice" and that "[a] state court's interpretation of a state's criminal statute is binding on a federal court." It held, however, that it could not agree with the state court's ruling and further, that it was not bound by the decision of the Massachusetts Appeals Court in this case. It explained,

[the appeals court] did not purport to decide whether the state legislature intended that activities such as petitioner's should be punished as two armed robberies under the statute. Rather, it ruled simply that the petitioner had committed two armed robberies under the statute as it had been interpreted by the Supreme Judicial Court. This Court may review such a ruling. *See Brown v. Ohio*, 432 U.S. [161] at 169 & n. 8 [97 S.Ct. 2221 at 2227 & n. 8, 53 L.Ed.2d 187 (1977)].

Petitioner reads the district court to mean that while it could not second guess the state legislature or, it seems, the state courts, in defining an "offense" or "unit of prosecution," it could oversee the *application* of the definition of the offense to the facts of a particular case. He thus con-

---

6. Mass.Gen.Laws ch. 265, § 17 (Armed robbery; punishment) reads in relevant part as follows:
   Whoever, being armed with a dangerous weapon, assaults another and robs, steals or takes from his person money or other property which may be the subject of larceny shall be punished by imprisonment in the state prison for life or for any term of years ....

cludes that the federal court rightfully intervened in the present action because "[t]he Massachusetts Appeals Court, in affirming petitioner's multiple armed robbery convictions, *misapplied* the clear rule established by the state statute as interpreted in the state's case law." (Emphasis added.)

Petitioner's distinction between a state court's interpretation of a state law and its application of that law is, in our view, unworkable. All would agree in this case that the *legislature* could constitutionally have explicitly defined the "unit of prosecution" for armed robbery so that petitioner's actions would constitute two or more offenses. *See Bell v. United States*, 349 U.S. 81, 82–83, 75 S.Ct. 620, 621–22, 99 L.Ed. 905 (1955) ("Congress could no doubt make the simultaneous transportation of more than one woman in violation of the Mann Act liable to cumulative punishment for each woman so transported. The question is: did it do so?"); *United States v. Universal C.I.T. Credit Corp.*, 344 U.S. 218, 221, 73 S.Ct. 227, 229, 97 L.Ed. 260 (1952); *In re Snow*, 120 U.S. 274, 282–84, 7 S.Ct. 556, 559–60, 30 L.Ed. 658 (1887). If the legislature foresaw each factual situation that might arise and provided for it in the statute, it could not be accused of usurping a court's function of "applying" the law to the circumstances of the case; it simply would be more narrowly and specifically defining the "unit of prosecution." By the same token, where the legislature has not defined the "unit of prosecution" precisely, and the state court therefore is presented with a case that the statute does not explicitly cover, the court interprets the legislative intent behind the statute to make the law more narrowly defined. This process is one of "interpretation," not "application," because unless the rule of law applicable in a given situation is clarified, it cannot be applied. In the instant case, for example, petitioner contends that the state court misapplied the "clear rule" of *Commonwealth v. Levia* in reaching its decision. The *Levia* holding, however, has no application to this factual situation nor is it necessarily inconsistent, as a matter of log-

ic, with the result reached here. Just as the Massachusetts Supreme Judicial Court had to interpret the legislative intent behind the armed robbery statute to resolve the *Levia* case, the Massachusetts Appeals Court had to interpret the statute, as construed in *Levia*, to determine its applicability in the present case.

We think any attempted distinction between "interpretation" and "application" is elusive, unsupported by any authority, and would be, as a practical matter, impossible to implement. Any time a state statute did not explicitly address the specific facts at issue, the state court's "application" of state law, however derived, would be subject to review in federal courts. Were we to accept this distinction, federal courts would be asked to draw this exceedingly fine line and to review many state court "applications" of state law that have heretofore been left to state court review. This would place an increased burden on the federal courts, would create a conflict between the two court systems and would not, insofar as we can see, serve any recognized need or ameliorate any noteworthy source of injustice.

Having rejected this approach, we proceed to several related arguments.

The district court did not ground its authority to reject the state court's determination on petitioner's application/interpretation distinction. Although the court ultimately concluded that the state court misread state law, its explanation for exercising review over the state court's ruling was that the state court was not really construing the statute at all, but was simply relying on its own judgment, as informed by Massachusetts precedent.

There is some precedent for this reasoning in one case decided by the Supreme Court, *Brown v. Ohio*, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977). In *Brown*, a divided Court reviewed a state court's determination of the applicable "unit of prosecution" where, among other failings, the state court was accused of not grounding its determination on an actual

construction of the relevant state statute, *see id.* at 169 & n. 8, 97 S.Ct. at 2227 & n. 8. We believe that *Brown* is factually distinguishable, and that the approach it reflects would be used by the Court only in extreme circumstances.[7] Only recently the Court reiterated the customary rule that federal courts "are bound to accept [a state] court's construction of that State's statutes" in the context of a state court's ruling on the legislative intent behind a state statute. *Missouri v. Hunter*, 459 U.S. 359, 368, 103 S.Ct. 673, 679, 74 L.Ed.2d 535 (1983) (citing *O'Brien v. Skinner*, 414 U.S. 524, 531, 94 S.Ct. 740, 744, 38 L.Ed.2d 702 (1974)). We think it must stand to reason, as a matter of comity, that federal courts will be slow to impute to a state court the lack of a principled basis for decision, *i.e.,* disregard of the criminal statute that defines the offense. The *Brown* majority can only have felt that the Ohio court had whimsically thrown all normal canons of construction to the wind, *see Brown*, 432 U.S. at 169 n. 8, 97 S.Ct. at 2227 n. 8 ("We ... would have a different case if in sustaining Brown's second conviction the Ohio courts had construed the joyriding statute to have that effect."). *See also id.* at 169, 97 S.Ct. at 2227 ("The

Double Jeopardy Clause is not such a fragile guarantee that prosecutors can avoid its limitations by the simple expedient of dividing a single crime into a series of temporal or spatial units."). We do not believe the Massachusetts Appeals Court's sustaining of the second conviction here was so plainly without basis in the underlying statute as to warrant rejection on a similar basis.

Indeed, it seems to us that the district court misread the Massachusetts Appeals Court's opinion, perhaps because its re-script set out the court's analysis in an abbreviated fashion. The cases that the state court cited indicate that the court recognized the centrality of legislative intent in resolving double jeopardy issues. *See Commonwealth v. Gurney*, 13 Mass. App. 391, 401, 433 N.E.2d 471, 477 (1982) (looking to the " 'dispositive question,' i.e., whether the Legislature intended to authorize multiple convictions in a given situation" in resolving "unit of prosecution" issue) (citing *Albernaz v. United States*, 450 U.S. 333, 337, 101 S.Ct. 1137, 1141, 67 L.Ed.2d 275 (1981)); *Commonwealth v. Winter*, 9 Mass.App. 512, 524, 402 N.E.2d 1372, 1379 (1980) ("we see no authority in the statute to fragment a conspiracy so

7. The Court intimated in *Whalen v. United States*, 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980), that federal courts may be unable to review even those state court double punishment decisions that are not grounded in legislative intent. The Court stated that, on the federal level,

The Fifth Amendment guarantee against double jeopardy embodies in this respect simply one aspect of the basic principle that within our federal constitutional framework the legislative power, including the power to define criminal offenses and to prescribe the punishments to be imposed upon those found guilty of them, *resides wholly with the Congress.* See *United States v. Wiltberger*, 5 Wheat. 76, 95 [5 L.Ed. 37]; *United States v. Hudson & Goodwin*, 7 Cranch 32, 34 [3 L.Ed. 259]. If a federal court exceeds its own authority by imposing multiple punishments not authorized by Congress, it violates not only the specific guarantee against double jeopardy, but also the constitutional principle of separation of powers in a manner that trenches particularly harshly on individual liberty.

*Id.* at 689, 100 S.Ct. at 1436 (emphasis added) (footnotes omitted). The Court then went on to

observe, however, that because the separation of powers doctrine embodied in the federal Constitution is not applicable to the states, *see Dreyer v. Illinois*, 187 U.S. 71, 84, 23 S.Ct. 28, 32, 47 L.Ed. 79 (1902), "[i]t is possible ... that the Double Jeopardy Clause does not, through the Fourteenth Amendment, circumscribe the penal authority of state courts in the same manner that it limits the power of federal courts." *Whalen*, 445 U.S. at 689–90 n. 4, 100 S.Ct. at 1436–37 n. 4. The Court appears to be divided on the issue of what other limitations the Constitution may place on the state courts' disposition of double jeopardy questions. *See, e.g., id.* ("The Due Process Clause of the Fourteenth Amendment, however, would presumably prohibit state courts from depriving persons of liberty or property as punishment for criminal conduct except to the extent authorized by state law."); *id.* at 706, 100 S.Ct. at 1445 (Rehnquist, J., dissenting) ("To the extent that the Court implies that a state court can ever err in the interpretation of its own law and that such an error would create a federal question reviewable by this Court, I believe it clearly wrong.") (footnote omitted).

double punishment results"). We can find nothing improper in the state court's use of prior judicial interpretations of Mass.Gen. Laws ch. 265, § 17, or analogous enact-ments to resolve the question before it. Although the district court apparently wished the state court to make explicit reference to legislative intent in construing the statute, we are not empowered to re-quire state courts interpreting state law to craft their opinions to our satisfaction.[8]

The facts of this case also distinguish it from *Brown*. We find nothing shocking or unreasonable in a finding that the armed robbery statute, which the Massachusetts Supreme Judicial Court held to be primarily concerned with assaults against the person, should be construed to be twice violated when a victim is twice forced, under threat of death, to yield different personal effects, in different locations, at discrete times, and under circumstances that posed different degrees of threat to the victim's personal safety. Thus we hold that the district court erred in disregarding the state court's interpretation of state law.

■ A final issue is petitioner's argu-ment that because the applicable "unit of prosecution" for armed robbery is ambigu-ous in this case, due process requires that the district court apply the "rule of lenity" to resolve the ambiguity in petitioner's fa-vor.

Recent Supreme Court decisions in the multiple punishment area of double jeopar-dy analysis have been subject to differing interpretations. The customary view is that in all except perhaps isolated situa-tions, *e.g., Brown v. Ohio*, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187, the double jeop-ardy clause merely adopts the state or fed-eral legislature's definition of the "unit of prosecution." *See Missouri v. Hunter*, 459 U.S. 359, 364, 103 S.Ct. 673, 677, 74 L.Ed.2d 535 (1983) ("With respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than

prevent the sentencing court from pre-scribing greater punishment than the legis-lature intended."). Under this view, when a defendant challenges his state court con-viction in federal court, the latter is bound by the state court's determination of the "unit of prosecution" established by the state law, and may not reject or overrule that reading in order to promote substan-tive policies that appeal to the federal court.

The other view, which the petitioner ad-vances, is that the double jeopardy clause creates a constitutional presumption against finding that the domestic law pre-scribes multiple punishment. Unless, therefore, it can be shown that the legisla-ture "clear[ly] and unmistakabl[y]" intend-ed the "unit of prosecution" to be read narrowly, *see Iannelli v. United States*, 420 U.S. 770, 791, 95 S.Ct. 1284, 1296, 43 L.Ed.2d 616 (1975), the "rule of lenity" requires a court to resolve any ambiguity in favor of invalidating the multiple punish-ment. *See* Westen, *The Three Faces of Double Jeopardy: Reflections on Govern-ment Appeals of Criminal Sentences*, 78 Mich.L.Rev. 1001, 1026–32 (1980) (herein-after cited as Westen, *The Three Faces*); Note, *Cumulative Sentences for One Criminal Transaction under the Double Jeopardy Clause*, 66 Cornell L.Rev. 819, 835–38 (1981) (hereinafter cited as Note, *Cumulative Sentences*). Under this view, the district court in this case would have had the power to question the state court's determination as to the *clarity* of the state legislature's intent to allow petitioner's conduct to be prosecuted as two separate armed robberies. If it found the legislative intent to be less than "clear and unmistak-able," it would then be constitutionally re-quired to apply the "rule of lenity" and vacate the duplicitous conviction.

We are unconvinced that the Court's re-cent double jeopardy decisions impose upon the states a constitutional presumption that

---

8. The district court itself did not engage in an explicit analysis of the legislative intent underly-ing the armed robbery statute. It merely exam-ined the facts, decided that the assault was con-tinuous, and "rule[d] that, under the reading of the armed robbery statute set out in *Levia*, the state violated petitioner's rights under the Dou-ble Jeopardy Clause."

lenity should prevail in the face of any ambiguity as to state legislative intent. The Supreme Court has consistently spoken of the "rule of lenity" in the context of federal statutory construction. *See Bifulco v. United States,* 447 U.S. 381, 387, 100 S.Ct. 2247, 2252, 65 L.Ed.2d 205 (1980); *Busic v. United States,* 446 U.S. 398, 406, 100 S.Ct. 1747, 1752, 64 L.Ed.2d 381 (1980); *Simpson v. United States,* 435 U.S. 6, 14, 98 S.Ct. 909, 913, 55 L.Ed.2d 70 (1978); *United States v. Bass,* 404 U.S. 336, 347, 92 S.Ct. 515, 522, 30 L.Ed.2d 488 (1971); *Callanan v. United States,* 364 U.S. 587, 596, 81 S.Ct. 321, 326, 5 L.Ed.2d 312 (1961); *Ladner v. United States,* 358 U.S. 169, 178, 79 S.Ct. 209, 214, 3 L.Ed.2d 199 (1958). The decision cited as constitutionalizing the rule in double jeopardy cases is *Whalen v. United States,* 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980) (cumulative punishment for D.C. offenses of rape and felony murder held contrary to federal and constitutional law). Although this reading of *Whalen* is not unsupportable, *see* Weston, *The Three Faces,* 78 Mich.L.Rev. at 1026–32, it is not required, and is belied by the Court's more recent decisions. *See Albernaz v. United States,* 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981); *see also Missouri v. Hunter,* 459 U.S. 359, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983). In *Albernaz,* the Court responded to an argument very like the petitioner's, stating:

> Finally, petitioners contend that because the legislative history is "ambiguous" on the question of multiple punishment, we should apply the rule of lenity so as not to allow consecutive sentences in this situation. Last Term in *Bifulco v. United States,* 447 U.S. 381 [100 S.Ct. 2247, 65 L.Ed.2d 205] (1980), we recognized that the rule of lenity is a principle of statutory construction which applies not only to interpretations of the substantive ambit of criminal prohibitions, but also to the penalties they impose. Quoting *Ladner v. United States,* 358 U.S. 169, 178 [79 S.Ct. 209, 214, 3 L.Ed.2d 199] (1958), we stated: " 'This policy of lenity means that the Court will not interpret a *federal* criminal statute so as to increase the penalty that it places on an individual when such an interpretation can be based on no more than a guess as to what *Congress* intended.' " 447 U.S. at 387 [100 S.Ct. at 2252]. We emphasized that the "touchstone" of the rule of lenity "is statutory ambiguity." And we stated: "Where Congress has manifested its intention, we may not manufacture ambiguity in order to defeat that intent." *Ibid.* Lenity thus serves only as an aid for resolving an ambiguity; it is not to be used to beget one. *The rule comes into operation "at the end of the process of construing what Congress has expressed, not at the beginning as an overriding consideration of being lenient to wrongdoers."* *Callanan v. United States, supra* [364 U.S.] at 596 [81 S.Ct. at 326].

450 U.S. at 342, 101 S.Ct. at 1144 (emphasis added). In the absence of a clear pronouncement to this effect by the Court, we reject petitioner's argument that the "rule of lenity" has been transformed from a rule of construction applicable to statutes that federal courts are charged with interpreting, *see Busic v. United States,* 446 U.S. 398, 406, 100 S.Ct. 1747, 1752, 64 L.Ed.2d 381 (1980), into a constitutional presumption mandated by the double jeopardy clause and made binding on the states through the due process clause of the fourteenth amendment.[9]

**9.** Petitioner's alleged constitutional "rule of lenity" is a corollary to the requirement that double punishment cases be decided by reference to legislative intent. The Court, however, has questioned whether state courts are bound to the legislative intent methodology, *see* note 7, *supra* (because federal courts' authority to impose punishments not authorized by Congress is circumscribed by the separation of powers doctrine, a doctrine not mandatory on the states, it is questionable whether a state court's imposition of double punishment that was not authorized by the state legislature, would be federally reviewable under the double jeopardy clause, as applied through the fourteenth amendment). Similarly, one might question whether the "rule of lenity," even if it were found to be part of the federal double jeopardy guarantee, is such an "integral" part of the fifth amendment as to apply to the states through the fourteenth

*That part of the district court's order of May 15, 1984 vacating petitioner's conviction and sentence on indictment 05942 is reversed.*

amendment. *Crist v. Bretz,* 437 U.S. 28, 32, 98 S.Ct. 2156, 2159, 57 L.Ed.2d 24 (1978) (federal rule that jeopardy attaches when jury is empaneled and sworn is "integral" to double jeopardy prohibition and thus is applicable to the states); *see Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969) (holding double

jeopardy prohibition of fifth amendment applicable to the states); *see also* Note, *Cumulative Sentences,* 66 Cornell L.Rev. at 836–40.