Michael SIMPSON, a/k/a Woods,
Petitioner, Appellee,

v.

COMMONWEALTH OF MASSACHU-
SETTS, Respondent, Appellant.

No. 85–1931.

United States Court of Appeals,
First Circuit.

Argued April 9, 1986.

Decided June 26, 1986.

Michael W. Dingle, Asst. Atty. Gen., Crim. Bureau, with whom Francis X. Bellotti, Atty. Gen., Frederick W. Riley, Asst. Atty. Gen., Chief, Crim. Bureau, and Barbara A.H. Smith, Asst. Atty. Gen., Chief, Crim. Appellate Div., Boston, Mass., were on brief, for respondent, appellant.

Robert A. Murphy by Appointment of the Court, with whom Casner, Edwards & Roseman, Boston, Mass., was on brief, for petitioner, appellee.

Before CAMPBELL, Chief Judge, and COFFIN and BOWNES, Circuit Judges.

BOWNES, Circuit Judge.

This is an appeal by the Commonwealth of Massachusetts from the granting of a writ of habeas corpus to Michael Simpson by the district court. The court ruled

> that the racially biased exercise of peremptory challenges by the prosecution fatally tainted the selection of the petitioner's trial jury in violation of his rights under the Sixth Amendment to the Constitution of the United States as made applicable to the states by the Fourteenth Amendment. I further rule that the error was not harmless and the petitioner has standing to prosecute this application.

*Simpson v. Commonwealth of Massachusetts,* 622 F.Supp. 304, 313 (D.Mass.1984).

In its opinion, the district court presciently predicted that the Supreme Court was looking for an opportunity to reconsider its holding in *Swain v. Alabama,* 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965). In *Swain,* the Court held that the use of peremptory challenges in a particular case by a state prosecutor to strike "Negroes" from the petit jury was not a denial of

equal protection of the laws, *id.* at 221, 85 S.Ct. at 836, because

> [t]he presumption in any particular case must be that the prosecutor is using the State's challenges to obtain a fair and impartial jury to try the case before the court. The presumption is not overcome and the prosecutor therefore subjected to examination by allegations that in the case at hand all Negroes were removed from the jury or that they were removed because they were Negroes.

*Id.* at 222, 85 S.Ct. at 837. The district court felt that the facts of this case made it a good vehicle for carrying such a reconsideration opportunity to the Court. The district court's prediction was correct, but the case overruling the *Swain* holding, *Batson v. Kentucky,* — U.S. —, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), was decided before this case had a chance to reach the Court. This raises the question of the retroactive effect, if any, to be given *Batson.* Because we do not think that the rule announced in *Batson* should be applied retroactively to the instant case, we reverse the district court.

We need not restate the facts and complicated procedural history of this case which are set forth fully in the district court opinion. For purposes of this opinion, we assume that the State prosecutor impermissibly exercised his peremptory challenges and that petitioner has exhausted his state remedies.[1]

In *Batson v. Kentucky,* — U.S. —, 106 S.Ct. 1712, 90 L.Ed.2d 69, the Supreme Court ruled that a defendant could raise an equal protection challenge to a prosecutor's use of peremptory challenges that excluded all black members from a petit jury in a case in which the defendant was black. In rejecting the implicated holding of *Swain v. Alabama,* the Court held

> that a defendant may establish a prima facie case of purposeful discrimination in selection of the petit jury solely on evidence concerning the prosecutor's exercise of peremptory challenges at the defendant's trial. To establish such a case,

the defendant first must show that he is a member of a cognizable racial group, *Casteneda v. Partida, supra,* [430 U.S. 482] at 494, [97 S.Ct. 1272, 1280, 51 L.Ed.2d 498], and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits "those to discriminate who are of a mind to discriminate." *Avery v. Georgia, supra,* [345 U.S. 559] at 562 [73 S.Ct. 891, 892, 97 L.Ed. 1244]. Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race. This combination of factors in the empanelling of the petit jury, as in the selection of the venire, raises the necessary inference of purposeful discrimination.

*Id.* 106 S.Ct. at 1722–23. The Court then explained how the State could rebut the prima facie showing of racial discrimination by the defendant. *Id.* at 1723.

■ Although the majority opinion is silent on the question of retroactivity, the Chief Justice, Justice White and Justice O'Connor stated that *Batson* should not be applied retroactively. In his concurring opinion, Justice White advocated adhering

> to the rule announced in *DeStafano v. Woods,* 392 U.S. 631 [88 S.Ct. 2093, 20 L.Ed.2d 1308] (1968) that *Duncan v. Louisiana,* 391 U.S. 145 [88 S.Ct. 1444, 20 L.Ed.2d 491] (1968), which held that the States cannot deny jury trials in serious criminal cases, did not require reversal of a state conviction for failure to grant a jury trial where the trial began prior to the date of the announcement in the *Duncan* decision.

*Id.* at 1726. In his dissenting opinion, the Chief Justice agreed with Justice White that the decision did not apply retroac-

---

1. Both of these propositions are vigorously challenged by the State.

tively. His statement of reasons bears quoting in full.

> We held in *Solem v. Stumes*, 465 U.S. 638, 643, 104 S.Ct. 1338, 1341, 79 L.Ed.2d 579 (1984), that
>
> > " '[t]he criteria guiding resolution of the [retroactivity] question implicate (a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards.' *Stovall v. Denno*, 388 U.S. 293, 297 [87 S.Ct. 1967, 1970, 18 L.Ed.2d 1199] (1967)."
>
> If we are to ignore Justice Harlan's admonition that making constitutional changes prospective only "cuts this Court loose from the force of precedent," *Mackey v. United States*, 401 U.S. 667, 680 [91 S.Ct. 1160, 1173, 28 L.Ed.2d 404]. (1971) (Harlan, J., concurring in judgment), then all three of these factors point conclusively to a nonretroactive holding. With respect to the first factor, the new rule the Court announces today is not designed to avert "the clear danger of convicting the innocent." *Tehan v. Shott*, 382 U.S. 406, 416 [86 S.Ct. 459, 465, 15 L.Ed.2d 453] (1966). Second, it [*sic*] readily apparent that "law enforcement authorities and state courts have justifiably relied on a prior rule of law ...." *Solem*, 465 U.S. at 645–646 [104 S.Ct. at 1342–43]. Today's holding clearly "overrule[s] [a] prior decision" and drastically "transform[s] standard practice." *Id.* at 647 [104 S.Ct. at 1343]. This fact alone "virtually compel[s]" the conclusion of nonretroactivity. *United States v. Johnson*, 457 U.S. 537, 549–550 [102 S.Ct. 2579, 2586–87, 73 L.Ed.2d 202] (1982). Third, applying today's decision retroactively obviously would lead to a whole host of problems, if not utter chaos. Determining whether a defendant has made a "prima facie showing" of invidious intent, *ante*, at 1723, and, if so, whether the State has a sufficient "neutral explanation" for its actions, *ibid.*,

essentially requires reconstructing the entire *voir dire*, something that will be extremely difficult even if undertaken soon after the close of the trial. In most cases, therefore, retroactive application of today's decision will be "a virtual impossibility." *State v. ·Neil*, 457 So.2d 481, 488 (Fla.1984).

> In sum, under our prior holdings it is impossible to construct even a colorable argument for retroactive application. The few States that have adopted judicially-created rules similar to that announced by the Court today have all refused full retroactive application. *See People v. Wheeler*, 22 Cal.3d [258], at 283, n. 31, [148 Cal.Rptr. 890, 908 n. 31] 583 P.2d, at 766, n. 31; *State v. Neil, supra,* at 488; *Commonwealth v. Soares*, 377 Mass. 461, 493, n. 38, 387 N.E.2d 499, 518, n. 38, *cert. denied*, 444 U.S. 881, 100 S.Ct. 170, 62 L.Ed.2d 110 (1979.)

*Id.* at 1741–42 (footnotes omitted). We find the reasoning of the Chief Justice and Justice White compelling.

 In addition to the reasons given by the Chief Justice and Justice White, two other intertwined considerations counsel against applying *Batson* to this case. First, in *Commonwealth v. Soares*, 377 Mass. 461, 387 N.E.2d 499, 516 (1979), the Supreme Judicial Court of Massachusetts held that the "exercise of peremptory challenges to exclude members of discrete groups, solely on the basis of bias presumed to derive from that individual's membership in the group" contravenes the State constitution. The Massachusetts Court held specifically: "The rule adopted today applies to the defendants in these cases and to the defendants in all cases now pending on direct appeal where the record is adequate to raise the issue." *Id.* 387 N.E.2d at 518 n. 38. Since petitioner's case had run the full gamut of state appellate review prior to the decision in *Soares*, its rule did not apply to him. In support of its stringent retroactive application of the

new rule, the Massachusetts Court cited a panoply of state and United States Supreme Court cases. The Supreme Court cases cited were: *Linkletter v. Walker,* 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965); *Mackey v. United States,* 401 U.S. 667, 675–702, 91 S.Ct. 1160, 1171–84, 28 L.Ed.2d 404 (1971) (Harlan, J., concurring); *Desist v. United States,* 394 U.S. 244, 256–69, 89 S.Ct. 1030, 1037–44, 22 L.Ed.2d 248 (1969) (Harlan, J., dissenting); *cf. Daniel v. Louisiana,* 420 U.S. 31, 95 S.Ct. 704, 42 L.Ed.2d 790 (1975) (holding that the rule of *Taylor v. Louisiana,* 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975), is applicable prospectively only). It is clear that the Massachusetts Court did not limit the retroactive effect of *Soares* without fully considering pertinent state and federal law. We think that considerable deference should be given to the refusal of the Massachusetts Court to give petitioner the benefit of its ruling in *Soares.* It would fly in the face of comity and the deference ordinarily due a state court in habeas cases to apply a federal rule retroactively when the State court has refused to do so with a similar State rule that predated and, to some extent, prefigured the federal holding.

■ Second, this case comes squarely within the rule that retroactive effect is not to be given to a case that is on collateral review, *i.e.,* where, as here, the conviction had become final before the new rule was announced. *See Shea v. Louisiana,* 470 U.S. 51, 105 S.Ct. 1065, 1070 n. 4, 84 L.Ed.2d 38 (1985); *Solem v. Stumes,* 465 U.S. 638, 650, 104 S.Ct. 1338, 1345, 79 L.Ed.2d 579 (1984); *United States v. Johnson,* 457 U.S. 537, 562, 102 S.Ct. 2579, 2593, 73 L.Ed.2d 202 (1982); *Mackey v. United States,* 401 U.S. 667, 686–92, 91 S.Ct. 1160, 1176–79, 28 L.Ed.2d 404 (1971) (separate opinion of Harlan, J.).

The petition for writ of habeas corpus should, therefore, be dismissed.

*Reversed and Remanded.*