Bryan COLPITT,

v.

Michael CUNNINGHAM, Warden, New Hampshire State Prison.

Civ. No. 86–35–D.

United States District Court,
D. New Hampshire.

July 18, 1986.

James E. Duggan, Appellate Defender Program, Franklin Pierce Law Center, Concord, N.H., for plaintiff.

Robert B. Muh, Asst. Atty. Gen., Concord, N.H., for defendant.

## ORDER

DEVINE, Chief Judge.

Petitioner Bryan Colpitt was convicted on March 28, 1985, by a Strafford County (New Hampshire) jury for robbery, New Hampshire Revised Statutes Annotated ("RSA") 636:1, and sentenced to a period of incarceration of two and one half to five years in New Hampshire State Prison. Petitioner timely filed a notice of appeal with the New Hampshire Supreme Court following his conviction. That court after reviewing the notice of appeal declined, pursuant to New Hampshire Supreme Court Rule 7(1), to accept the appeal on August 6, 1985. Petitioner then moved for reconsideration of the declination of appeal, but this motion was denied without explanation on November 18, 1985. *See* N.H.Sup.Ct.Rule 3.

Petitioner then filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 with this court on January 24, 1986, challenging the federal constitutionality of the New Hampshire Supreme Court's decision declining to hear his appeal initially or upon reconsideration. On February 3, 1986, the Magistrate issued a Report, Recommendation and Order finding that petitioner's challenge to New Hampshire's appellate process failed to state a cause of action, but further permitted petitioner to amend his complaint following appointment of counsel. On February 12, 1986, petitioner filed an amended petition for writ of habeas corpus, again challenging the constitutionality of the New Hampshire appellate system as well as the refusal of the trial court to order a competency hearing for petitioner.[1] On February 20, 1986, the Magistrate issued a Further Report, Recommendation and Order, again finding that the challenge to the appellate court system of the State of New Hampshire failed to state a cause of action upon which relief may be granted. The Magistrate did, however, order the State of New Hampshire to show cause why the writ should not issue on the substantive ground that the trial judge committed errors of federal constitutional dimension.

Presently before the Court is petitioner's objection to the Magistrate's findings and recommendations, 28 U.S.C. § 636(b)(1)(C),

---

1. Petitioner, without benefit of a trial transcript, had raised several other grounds for habeas relief in his amended petition, including challenges to several evidentiary rulings of the trial court and a challenge to the sufficiency of the indictment. Petitioner has withdrawn these claims following receipt and review of the trial transcript.

*see* Local Rule B, and respondent's motion to dismiss the petition for writ of habeas corpus with petitioner's objection thereto. The Court must accordingly resolve the following issues:

 1. whether the trial court abridged petitioner's constitutional rights to due process by denying petitioner's motions for a hearing on his competency to stand trial, and

 2. whether the state appellate process by which petitioner's appeal was declined abridged petitioner's constitutional rights to due process, equal protection, and effective assistance of counsel.

For the following reasons, the Court finds and rules that neither the trial court nor the state appellate process abridged plaintiff's constitutional rights and that the petition for habeas corpus must be dismissed.

### 1. Failure of Trial Court to Order Competency Hearing

Petitioner's counsel sought a competency hearing after petitioner's direct testimony and at the close of the evidence. Tr. 179–93; 219–20. The trial judge refused to order a hearing, finding no bona fide question as to petitioner's competency. Petitioner asserts, however, that a bona fide doubt existed as to his competency to stand trial because it was undisputed that (1) he had previously spent time at the New Hampshire Hospital, Tr. 158; (2) he was under medication for paranoid schizophrenia, Tr. 210; (3) he was being treated at the Strafford Guidance Center, Tr. 159; (4) his brother testified that he exhibited strange behavior, such as talking to walls, Tr. 203; and (5) his trial testimony was rambling and bizarre.

 It is well established that conviction of an accused person while he is legally incompetent violates due process. *Bishop v. United States*, 350 U.S. 961, 76 S.Ct. 440, 100 L.Ed. 835 (1956). In *Pate v. Robinson*, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966), the United States Supreme Court held that a plaintiff has a procedural due process right to a competency hearing whenever the facts before

the trial court raise or should raise a bona fide doubt concerning competency. *See, e.g., Tarrant v. Ponte*, 586 F.Supp. 1369, 1371 (D.Mass.1984), *rev'd on other grounds*, 751 F.2d 459 (1st Cir.1985). The due process test is "whether [defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960). The trial court's determination of whether a bona fide doubt exists as to a defendant's competency should be based on "evidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion...." *Drope v. Missouri*, 420 U.S. 162, 180, 95 S.Ct. 896, 908, 43 L.Ed.2d 103 (1975).

 Limiting review of the trial court's decision (that no bona fide doubt existed as to plaintiff's competence) to consideration of the evidence before the court at the time of decision, *see United States Ex Rel. Foster v. DeRobertis*, 741 F.2d 1007, 1011 (7th Cir.1984), *cert. denied*, —— U.S. ——, 105 S.Ct. 972, 83 L.Ed.2d 975 (1985), this Court finds the decision amply supported by record evidence. First, while it is undisputed that plaintiff had previously been admitted to the New Hampshire Hospital and suffered from paranoid schizophrenia, it is also undisputed that the admissions were voluntary, with the most recent admission and discharge occurring between four and five years prior to trial. Tr. 158, 211. Similarly, while plaintiff was being treated at the Strafford Guidance Center, such treatment was on an out-patient basis. Tr. 212.

More importantly, however, the Court notes a marked absence of evidence indicating a present inability of plaintiff to assist his counsel or to understand the charges against him. Plaintiff in fact acknowledged on cross-examination that he understood the charges against him and that this understanding was a result of his consultations with counsel. Tr. 193–94. Moreover, he acknowledged that he understood the consequences of a conviction for robbery.

Tr. 194. The Court notes further that plaintiff's testimony, while at variance with that of other witnesses, is for the most part lucid and coherent and reflects plaintiff's conscious purpose at the time of the robbery to abscond with the victim's handbag for the purpose of acquiring money. Tr. 194.

The Court is further convinced that the evidence presented to the trial court did not warrant a competency hearing upon review of the evolution of cases from *Pate v. Robinson, supra,* 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815. The lack of psychiatric evaluation and subsequent competency determination did not violate a defendant's right to due process in *Hance v. Zant,* 696 F.2d 940, 948–49 (11th Cir.), *cert. denied,* 463 U.S. 1210, 103 S.Ct. 3544, 77 L.Ed.2d 1393 (1983), even though the defendant had written letters from the "forces of evil" replete with seemingly lunatic ravings. Similarly, the refusal to conduct a competency hearing did not abridge a defendant's due process rights in *Jackson v. Caldwell,* 461 F.2d 682 (5th Cir.), *cert. denied, sub nom. Jackson v. Georgia,* 409 U.S. 991, 93 S.Ct. 334, 34 L.Ed.2d 257 (1972), even though the defendant was mentally retarded, had been discharged from the Army for illness, was subject to schizophrenic fits of anger and paranoia, and had murdered his wife, burying her in a field and planting peas over her corpse.

■ The trial court was satisfied that there was no bona fide doubt as to plaintiff's competence to stand trial, i.e., no bona fide doubt as to plaintiff's ability to assist counsel and understand the charges against him. This finding, particularly where the trial court was best situated to observe plaintiff's demeanor at trial, must be accorded a high degree of deference by this Court upon habeas review. *See Maggio v. Fulford,* 462 U.S. 111, 103 S.Ct. 2261, 76 L.Ed.2d 794 (1983); *Sumner v. Mata,*

455 U.S. 591, 598, 102 S.Ct. 1303, 1307, 71 L.Ed.2d 480 (1982).

Accordingly, the Court finds and rules that the trial court's decision to deny plaintiff a competency hearing based upon the evidence before the trial court at the time of decision did not violate plaintiff's right to due process and that this asserted ground for habeas relief must be rejected.[2]

### 2. State Appellate Process

The New Hampshire Supreme Court in declining to accept plaintiff's appeal and in denying plaintiff's motion to reconsider that declination decision invoked N.H.Sup. Ct.Rules 7(1) and 3. Rule 7(1) provides:

> The supreme court may, in its discretion, decline to accept an appeal from a lower court after a decision on the merits.

Rule 3 provides in pertinent part:

> "Declination of an acceptance order": The supreme court does not deem it desirable to review the issues in a case, as a matter of sound judicial discretion and with no implication whatever regarding its view on the merits.

According to plaintiff, these rules, and hence the New Hampshire appellate process, violate his rights to due process, equal protection, and effective assistance of counsel.

■ Upon review of the submitted petitions and related memoranda, the Court finds and rules that the New Hampshire appellate procedures outlined above do not suffer from any infirmities of *constitutional* dimension. As properly decided and discussed in more detail by the Magistrate in his Further Report, Recommendation and Order, the established principle that there is no federal constitutional right to appeal a criminal conviction, *McKane v. Durston,* 153 U.S. 684, 687, 14 S.Ct. 913, 914, 38 L.Ed. 867 (1894); *Griffin v. Illinois,* 351 U.S. 12, 18, 76 S.Ct. 585, 590, 100

---

**2.** Plaintiff also seeks to have the Court determine whether the trial court's decision violated his rights under the New Hampshire Constitution. Such request is, however, beyond the purview and jurisdiction of the Court in its resolution of petitions for writ of habeas corpus. *See* 28 U.S.C. § 2254(a).

L.Ed. 891 (1956),[3] coupled with the fact that the state discretionary appeal rules are analogous to the discretionary rule of the United States Supreme Court regarding applications for writs of certiorari is sufficient to allow the New Hampshire appellate rules to withstand constitutional challenge. Accordingly, the objection to the Magistrate's findings and recommendations, 28 U.S.C. § 636(b)(1)(C), is denied, and this ground for habeas relief is rejected.

The motion to dismiss the petition for writ of habeas corpus is herewith granted.

SO ORDERED.

---

**3.** This principle, entrenched in constitutional jurisprudence for almost a century, may yet be questioned. As noted in *Jones v. Barnes,* 463 U.S. 745, 756 n. 1, 103 S.Ct. 3308, 3315 n. 1, 77 L.Ed.2d 987 (1982), (Brennan, J., dissenting):

> If the question were to come before us in a proper case, I have little doubt … that we would decide that a State must afford at least some opportunity for review of convictions, whether through the familiar mechanism of appeal or through some form of collateral

proceeding. There are few, if any, situations in our system of justice in which a single judge is given unreviewable discretion over matters concerning a person's liberty or property, and the reversal rate of criminal convictions on mandatory appeals in the state courts, while not overwhelming, is certainly high enough to suggest that depriving defendants of their right to appeal would expose them to an unacceptable risk of erroneous conviction.