**GILLESPIE, James, Appellant,**

v.

**RYAN, Joseph (Superintendent); The Attorney General of the State of Pennsylvania.**

No. 87–5267.

United States Court of Appeals, Third Circuit.

Argued Jan. 19, 1988.

Decided Jan. 29, 1988.

Rehearing and Rehearing En Banc Denied March 7, 1988.

Michael J. Foley (argued), Thomas J. Foley, Jr. and Associates, P.C., Scranton, Pa., for appellant.

Ernest D. Preate, Jr. (argued), Dist. Atty., Lois H. Lichtenwalner, Asst. Dist. Atty., Scranton, Pa., for appellees.

Before GIBBONS, Chief Judge, WEIS and GREENBERG, Circuit Judges.

### OPINION OF THE COURT

GIBBONS, Chief Judge:

James Gillespie appeals from the district court's denial of his petition for a writ of habeas corpus. This court granted a petition for a certificate of probable cause and therefore has jurisdiction pursuant to 28 U.S.C. § 2253 (1982). We hold that the double jeopardy clause of the federal constitution was not violated by sentencing Gillespie for both felony murder and the underlying felony. Accordingly, we will affirm.

### I

On October 9, 1969, James Gillespie robbed a gas station, took the attendant to an isolated area, and shot him to death. On June 28, 1972, he was convicted of first degree murder and armed robbery. At the

time of the offense, the Pennsylvania murder statute provided: "All murder which shall be perpetrated by means of poison, or by lying in wait, or by another kind of willful, deliberate and premeditated killing, or which shall be committed in the perpetration of, or attempting to perpetrate any arson, rape, robbery, burglary or kidnapping, shall be murder in the first degree." Act of June 24, 1939, P.L. 872 § 701. Since the trial judge charged the jury on both the premeditated and the felony murder aspects of the statute, it is impossible to know on which theory the jury convicted Gillespie of first degree murder.

Gillespie was sentenced to life imprisonment for the murder and a consecutive term of five to ten years for the robbery. The conviction was affirmed by the Supreme Court of Pennsylvania. His petition for a writ of habeas corpus was denied by the United States District Court for the Middle District of Pennsylvania. This court affirmed and the Supreme Court denied the petition for certiorari.

Gillespie returned to the Pennsylvania court system and filed a petition for post-conviction relief, claiming, among other things, that the sentence on both the murder conviction and the robbery conviction violated the double jeopardy clause of the federal constitution. The trial court denied the petition. On appeal, the Pennsylvania Superior Court accepted Gillespie's double jeopardy contention, relying on a closely analogous case decided by the Supreme Court of Pennsylvania, *Commonwealth v. Tarver*, 493 Pa. 320, 426 A.2d 569 (1981) (overruling *Commonwealth v. Sparrow*, 471 Pa. 490, 370 A.2d 712 (1977)). Following a grant of allocatur, the Pennsylvania Supreme Court reversed the Superior Court, holding that the *Tarver* decision was not to be applied retroactively in collateral attacks on convictions. *Commonwealth v. Gillespie*, 512 Pa. 349, 516 A.2d 1180 (1986).

Gillespie filed another petition for a federal writ of habeas corpus. The magistrate to whom the petition was referred for a report and recommendation, concerned that Gillespie was raising an issue not presented to the Pennsylvania courts, asked Gillespie to clarify whether he was claiming any ground for relief other than the double jeopardy claim. While Gillespie's *pro se* response was far from clear, the magistrate recommended that the district judge view the petition as raising only the double jeopardy claim. The magistrate did not discuss the merits of the double jeopardy claim, agreeing with the Pennsylvania Supreme Court that *Tarver* should not be applied retroactively to Gillespie's case. On April 14, 1987, the district judge adopted the magistrate's report, denied the petition, and stated that there was no probable cause for appeal. On April 20, 1987, Gillespie filed a notice of appeal, and, on July 14, 1987, this court granted his petition for a certificate of probable cause and his motion for appointment of counsel.

## II

It is clear that Gillespie exhausted his state remedies regarding the double jeopardy issue. Since Gillespie does not object to the magistrate's interpretation of his submissions as raising only the double jeopardy claim, we conclude that we are not faced with a "mixed" petition of exhausted and unexhausted claims. *See Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982).

This appeal raises only questions of the interpretation and application of legal precepts. With regard to the merits of Gillespie's double jeopardy claim and the retroactivity of federal constitutional doctrine, we exercise plenary review. While the views of both the district court and the Pennsylvania Supreme Court are entitled to respectful consideration, we cannot defer to their interpretation of federal law. *Missouri v. Hunter*, 459 U.S. 359, 368, 103 S.Ct. 673, 679, 74 L.Ed.2d 535 (1983); *but see Simpson v. Commonwealth of Massachusetts*, 795 F.2d 216, 219 (1st Cir.), *cert. denied*, —— U.S. ——, 107 S.Ct. 676, 93 L.Ed.2d 727 (1986). On the other hand, this court is bound by the Pennsylvania Supreme Court's interpretation of Pennsylvania law. *Hunter*, 459 U.S. at 368, 103 S.Ct. at 679.

### III

The Fifth Amendment provides, in relevant part, "[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb." It has been said that the double jeopardy clause serves three primary purposes. "It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed. 2d 656 (1969). Since Gillespie was not subject to multiple prosecutions, only the third aspect, the multiple punishment aspect, is involved in this case.

The seminal case in the area of multiple punishments is *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). There the Court held that consecutive sentences under two different sections of the federal narcotics laws were permissible even though there was only one sale of narcotics since "[e]ach of the offenses created requires proof of a different element." 284 U.S. at 304, 52 S.Ct. at 182. "The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Id.*

For a time, it appeared that the *Blockburger* test constituted a restriction on the power of states and Congress to define the substantive elements of criminal offenses. *See Simpson v. United States*, 435 U.S. 6, 10–13, 98 S.Ct. 909, 911–913, 55 L.Ed.2d 70 (1978); *Jeffers v. United States*, 432 U.S. 137, 155, 97 S.Ct. 2207, 2218, 53 L.Ed.2d 168 (1977) (plurality opinion authored by Justice Blackmun). As Justice Blackmun himself noted, this suggestion in *Simpson*

and *Jeffers* "caused confusion among state courts that ... attempted to decipher our pronouncements concerning the Double Jeopardy Clause's role in the area of multiple punishments." *Whalen v. United States*, 445 U.S. 684, 698, 100 S.Ct. 1432, 1441, 63 L.Ed.2d 715 (1980) (Blackmun, J., concurring in the judgment). He pointed in particular to the "disorder among state appellate courts" regarding the permissibility of imposing, after a single trial, cumulative sentences for felony murder and the underlying felony. 445 U.S. at 698–99, 100 S.Ct. at 1441–42. *Cf. Harris v. Oklahoma*, 433 U.S. 682, 97 S.Ct. 2912, 53 L.Ed.2d 1054 (1977) (per curiam) (double jeopardy clause bars successive prosecutions for felony murder and the underlying felony).

The Court in *Whalen*, however, while alluding to *Blockburger* as a rule of statutory construction, 445 U.S. at 691, 100 S.Ct. at 1437, declined to follow Justice Blackmun's suggestion that it "repudiate those dicta [in *Simpson* and *Jeffers*] squarely, and ... hold clearly that the question of what punishments are constitutionally permissible is not different from the question of what punishments the Legislative Branch intended to be imposed." 445 U.S. at 698, 100 S.Ct. at 1441. This was the state of the law when the Pennsylvania Supreme Court, applying the *Blockburger* test, decided that the double jeopardy clause of the federal constitution bars multiple punishments for felony murder and the underlying felony. *Commonwealth v. Tarver*, 493 Pa. 320, 426 A.2d 569 (1981) (overruling *Commonwealth v. Sparrow*, 471 Pa. 490, 370 A.2d 712 (1977)).[1]

However, subsequent to *Tarver*, the United States Supreme Court did what Justice Blackmun had suggested in *Whalen*. It held:

> [S]imply because two criminal statutes may be construed to proscribe the same conduct under the *Blockburger* test does

---

1. It might be argued that *Tarver* was a multiple prosecutions case rather than a multiple punishments case since the defendant was charged in two separate indictments and was sentenced on the murder conviction before being tried on the robbery charge. *But see Ohio v. Johnson*, 467 U.S. 493, 104 S.Ct. 2536, 81 L.Ed.2d 425 (1984)

(plea to one count of indictment and sentence on that count does not bar continued prosecution on other counts). In *Tarver*, however, the Pennsylvania Supreme Court did not distinguish *Sparrow* (which was clearly a multiple punishments case) on this basis, but rather overruled *Sparrow*.

not mean that the Double Jeopardy Clause precludes the imposition, in a single trial, of cumulative punishments pursuant to those statutes. The rule of statutory construction noted in *Whalen* is not a constitutional rule requiring courts to negate clearly expressed legislative intent. Thus far, we have utilized that rule only to limit a federal court's power to impose convictions and punishments when the will of Congress is not clear. Legislatures, not courts, prescribe the scope of punishments.

Where, as here, a legislature specifically authorizes cumulative punishment under two statutes, regardless of whether those two statutes proscribe the "same" conduct under *Blockburger*, a court's task of statutory construction is at an end and the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial.

*Missouri v. Hunter*, 459 U.S. 359, 368–69, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983).

The authoritative interpreter of Pennsylvania law is the Pennsylvania Supreme Court. In *Commonwealth v. Sparrow*, 471 Pa. 490, 370 A.2d 712 (1977), the Pennsylvania Supreme Court held that, under Pennsylvania law, felony murder and the underlying felony are distinct offenses. While it did not frame its analysis strictly in terms of legislative intent (since the relevant statute left in place the Pennsylvania common law definition of murder), it clearly was construing Pennsylvania law.[2] It explained:

As applied in Pennsylvania, common law felony-murder is a means of imputing malice where it may not exist expressly. This degree of commonality, and the circumstance that both crimes were committed in the course of a single "episode", cannot obscure the obvious fact that robbery is not a lesser degree of murder; it is a totally discrete offense. Both our common law and statu-

tory law has said that when an unjustified killing occurs in the course of committing another specified type of crime, the homicide is murder in the first degree. The societal interest behind such a doctrine is the preservation of human life, so often casually forfeited in the commission of crimes of violence. That purpose would be ill-served by a rule which would say to a felon that "if you happen to kill the victim of your robbery (or your rape, or burglary, or kidnapping, or arson) you will not be punished for the underlying crime." Sparrow committed two distinct crimes, robbery and murder; one was a stealing, the other a killing. There was no merger of these crimes, and he cannot complain that he was sentenced for both.

471 Pa. at 504–06, 370 A.2d at 719–20 (citations, footnotes and internal quotations omitted). It dismissed the double jeopardy argument in one sentence, stating, "Having concluded that the [Pennsylvania law] merger doctrine is inapplicable to the facts of this case because separate offenses are involved, we are satisfied that no double jeopardy problem is posed under the Constitution of the United States." 471 Pa. at 507, 370 A.2d at 721.[3]

The decision in *Tarver*, while overruling *Sparrow*, did not purport to reinterpret Pennsylvania law. Instead, applying the *Blockburger* test and discussing other federal double jeopardy cases, it held that the double jeopardy aspect of *Sparrow* was "clearly erroneous." *Tarver*, 493 Pa. at 327, 426 A.2d at 573. Thus, in our view, *Sparrow* remains the authoritative enunciation of Pennsylvania law on the subject. Accordingly, since the double jeopardy question is coextensive with the substantive criminal law question, there was no violation of the double jeopardy clause of the federal constitution.

Our conclusion would not be different if *Tarver* were read as a reinterpretation of

**2.** We reject the suggestion that the double jeopardy clause dictates the rules of construction which state courts must follow in their interpretation of state criminal law. *Tarrant v. Ponte*, 751 F.2d 459, 465–66 (1st Cir.1985); *People v. Robideau*, 419 Mich. 458, 484–86, 355 N.W.2d

592, 603 (1984); *contra Pryor v. Rose*, 724 F.2d 525, 530–31 (6th Cir.1984).

**3.** The court apparently believed that its merger doctrine "is generally thought to be more lenient to defendants" than the federal standards. 471 Pa. at 503, n. 8, 370 A.2d at 718, n. 8.

Pennsylvania law. No federal statute or judicially-enforceable provision of the federal constitution prohibits a state court from reinterpreting a state criminal statute in a way which is more favorable to defendants but limiting the benefits of the reinterpretation to those whose convictions were not yet final. Since, as a matter of Pennsylvania law, Gillespie cannot take advantage of *Tarver*, his federal double jeopardy claim must also fall.

More generally, it appears that the decision in *Hunter*, equating the multiple punishment analysis under the double jeopardy clause with an analysis of the substantive criminal law, leaves virtually no room for federal relief for state prisoners based on the multiple punishment prong of the double jeopardy clause. Absent extraordinary circumstances, the state courts will have the final word on the substantive criminal law. *See Tarrant v. Ponte*, 751 F.2d 459, 463–64 (1st Cir.1985); *but see Pryor v. Rose*, 724 F.2d 525, 530–31 (6th Cir.1984).

In light of our conclusion that there was no double jeopardy violation, we need not decide whether the rationale of the multiple punishments aspect of the double jeopardy clause is so different from the rationale of its multiple prosecutions aspects that an exception to the general rule of complete retroactivity for double jeopardy decisions is appropriate. *See Robinson v. Neil*, 409 U.S. 505, 93 S.Ct. 876, 35 L.Ed.2d 29 (1973); *see also Griffith v. Kentucky*, —— U.S. ——, 107 S.Ct. 708, 714 & n. 10, 93 L.Ed.2d 649 (1987); *United States v. Johnson*, 457 U.S. 537, 550, 102 S.Ct. 2579, 2587, 73 L.Ed. 2d 202 (1982); *Vogel v. Commonwealth of Pennsylvania*, 790 F.2d 368 (3d Cir.1986).

## IV

We conclude that the sentencing of Gillespie, after one trial, to consecutive terms for felony murder and the underlying felony of robbery did not violate the double jeopardy clause of the federal constitution. Accordingly, we will affirm the district court's denial of his petition for a writ of habeas corpus.