**Robyn A. TODD, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–4618.**

Court of Appeals of Alaska.

Oct. 21, 1994.

Hearing Granted Jan. 10, 1995.

Blair McCune, Asst. Public Defender, and John B. Salemi, Public Defender, Anchorage, for appellant.

Kenneth M. Rosenstein, Asst. Atty. Gen., Office of Sp. Prosecutions and Appeals, Anchorage, and Charles E. Cole, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and MANNHEIMER, JJ.

## OPINION

MANNHEIMER, Judge.

Robyn A. Todd and an accomplice, Joseph Harvey, robbed the Hub Bar in Anchorage. They forced their way into the office at gunpoint and threatened the owner, Lloyd Dahl, and two employees, Nancy Jourdan and George Gillis. Todd led Gillis to another area of the bar, while Harvey stayed with Dahl in the office. Harvey directed Dahl to give him the bar's cash receipts. When Dahl resisted, he was shot and killed. Jourdan heard the gun shot from outside the office; she fled the bar and flagged down a passing community patrol van. The police were quickly summoned and, after a brief armed confrontation, Todd and Harvey were arrested.

Todd was convicted of the first-degree robbery of Lloyd Dahl, AS 11.41.500(a)(1), the second-degree murder of Lloyd Dahl, AS 11.41.110(a)(3), and the third-degree assault of George Gillis, AS 11.41.220(a)(1). At his sentencing, Todd argued that the double jeopardy clauses of the Federal and State Constitutions[1] barred separate sentences for the murder, robbery, and assault. Superior Court Judge Rene J. Gonzalez disagreed, ruling that Todd could constitutionally receive separate sentences for these three crimes.

■ On appeal, Todd renews his argument that he can only be sentenced for murder— that the double jeopardy clauses of the Federal and State Constitutions bar his receiving separate convictions and punishments for the robbery and assault.[2]

■ The propriety of Todd's separate conviction and sentence for the third-degree assault of George Gillis is the easier issue. The Alaska Supreme Court has held that a defendant who victimizes two or more people by a single assaultive act commits a separately punishable assault for each victim. *Cooper v. State*, 595 P.2d 648 (Alaska 1979). Likewise, a single act of recklessness that kills two or more people constitutes a separately punishable manslaughter for each victim. *State v. Dunlop*, 721 P.2d 604 (Alaska 1986). Thus, even if the assault on Gillis had arisen from exactly the same act as the assault and killing of Dahl, it still would constitute a separately punishable crime under Alaska law.

■ We turn now to the constitutionality of Todd's robbery conviction. Todd's argument rests on two premises: first, that robbery is a lesser included offense of felony murder, and second, that it is unconstitutional to separately punish anyone for both a greater offense and an included offense.

Todd's most serious offense, felony murder, is a form of second-degree murder under AS 11.41.110(a)(3):

A person commits the crime of murder in the second degree if

. . . .

(3) acting either alone or with one or more persons, the person commits or attempts to commit arson in the first degree, kidnapping, sexual assault in the first degree, sexual assault in the second degree, burglary in the first degree, escape in the first or second degree, or robbery in any degree and, in the course of or in furtherance of that crime, or in immediate flight from that crime, any person causes the death of a person other than one of the participants.

---

1. The Fifth Amendment to the United States Constitution and Article I, Section 9 of the Alaska Constitution.

2. Because Todd was tried and convicted of his various offenses at a single trial, his case does not involve the double jeopardy clause's limita-

tion on multiple trials. Rather, Todd's case involves only the double jeopardy clause's prohibition of multiple punishments for the same criminal act. *See Missouri v. Hunter*, 459 U.S. 359, 365–66, 103 S.Ct. 673, 678, 74 L.Ed.2d 535 (1983).

The State concedes that, under Alaska's cognate approach to lesser included offenses, announced in *Elisovsky v. State*, 592 P.2d 1221, 1225–26 (Alaska 1979), and in light of the way Todd's offenses were pleaded, first-degree robbery was a lesser included offense of felony murder in Todd's case. This concession would seem to resolve this litigation in Todd's favor because of two previous Alaska decisions: *Tuckfield v. State*, 621 P.2d 1350 (Alaska 1981), and *Hughes v. State*, 668 P.2d 842 (Alaska App.1983).

In *Tuckfield*, the defendant had been convicted of both rape and assault with intent to commit rape arising from a single assault. The supreme court ruled that, under the theory of Tuckfield's prosecution, assault with intent to commit rape had been a lesser included offense of the completed rape. The court then held that the double jeopardy clause prohibited separate convictions for both the greater offense and the lesser included offense:

> It is well settled that [the] double jeopardy [clause] is violated by conviction of both an offense and a lesser included offense, unless the convictions arise from separate conduct. *E.g., In re Dennis B.* [18 Cal.3d 687], ... 135 Cal.Rptr. 82, 557 P.2d 514 (Cal.1976); *People v. Brown* [185 Colo. 272], ... 523 P.2d 986, 988 (1974). [This] rule is related to, but distinguishable from, the question considered in *Whitton v. State* [479 P.2d 302 (Alaska 1970)] ... concerning when separate punishment[s] may be imposed for separate statutory offenses arising out of the same conduct.... A lesser included offense may differ in terms of conduct or intent from the greater offense [for *Whitton* purposes]. However, a conviction of both will still be proscribed by the double jeopardy bar.

*Tuckfield*, 621 P.2d at 1352.

Two years later, this court applied the *Tuckfield* holding in *Hughes v. State*. Hughes was charged with first-degree murder and attempted armed robbery under Alaska's former criminal code. A jury found

him guilty of attempted armed robbery but was unable to agree on a first-degree murder verdict. *Hughes*, 668 P.2d at 843. To resolve the murder charge, Hughes entered a plea to manslaughter. However, he argued that, under *Tuckfield*, the double jeopardy clause barred separate convictions for manslaughter and robbery because the robbery had been a lesser included offense of the manslaughter. *Id.* at 843–44.[3]

The State attempted to avoid *Tuckfield* by arguing, "[w]ithout any analysis, ... that attempted armed robbery is not a lesser included offense of manslaughter." *Id.* at 844. This court rejected the State's argument, declaring:

> The principle that an underlying felony is a lesser-included offense of a felony homicide is well supported by federal and state case law.... Under [the] theory of manslaughter [presented by the State (that is, that an unintentional killing occurred during Hughes's commission of armed robbery)], the attempted armed robbery is a lesser included offense of the manslaughter charge. We therefore hold that *Tuckfield* requires us to find that convicting Hughes of both attempted robbery and manslaughter violated double jeopardy....

*Hughes*, 668 P.2d at 844–45 & n. 6.

In the present appeal, Todd relies heavily on *Tuckfield* and *Hughes*. The State, for its part, argues that *Tuckfield* should be limited to its facts and that *Hughes* was wrongly decided. The State's argument, like the trial court's ruling, rests on the supreme court's decision in *Whitton v. State*, 479 P.2d 302 (Alaska 1970).

*Whitton* is the supreme court's seminal decision on the issue of "whether separate punishments may be imposed for the commission of separate statutory offenses arising from a single criminal event". 479 P.2d at 305. After surveying the United States Supreme Court's decisions on this issue, our supreme court chose to adopt a different

---

**3.** Under Alaska's pre–1980 criminal code, a homicide committed during the commission of a felony was first-degree murder if the defendant acted with intent to kill; otherwise, the homicide was manslaughter. *Keith v. State,* 612 P.2d 977, 987–88 (Alaska 1980); *Gray v. State,* 463 P.2d 897, 906 (Alaska 1970).

approach as a matter of state constitutional law:

> In determining whether several statutory violations constitute the same offense for double jeopardy purposes, we will no longer follow the same-evidence test as enunciated in *Blockburger v. United States* [284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306, 309 (1932).] ... We now meet the problem in another way, ... by focusing upon the quality of the differences, if any exist, between the separate statutory offenses, as such differences relate to the basic interests sought to be vindicated or protected by the statutes.

> The trial judge first would compare the different statutes in question, as they apply to the facts of the case, to determine whether [they] involved differences in intent or conduct. [The judge] would then [analyze] any such differences ... in light of the basic interests of society to be vindicated or protected, and decide whether those differences were substantial or significant enough to warrant multiple punishments. The social interests to be considered ... include the nature of personal, property[,] or other rights sought to be protected, and the broad objectives of [the] criminal law[,] such as punishment of the criminal for his crime, rehabilitation of the criminal, and prevention of future crimes.

*Whitton*, 479 P.2d at 312.

Here, when Todd raised the double jeopardy issue in the superior court, Judge Gonzalez agreed that robbery was a lesser included offense of felony murder in Todd's case; that is, if Todd committed felony murder as alleged, he perforce committed first-degree robbery. Nevertheless, Judge Gonzalez ruled that the differences in intent and conduct between robbery and felony murder were substantial enough to justify separate convictions and sentences under *Whitton*.

Todd asserts that the trial court's ruling violates both Alaska law and federal law. With regard to Alaska law, Todd argues that the Alaska Supreme Court's decision in *Tuckfield* establishes the hard-and-fast rule that separate convictions are never allowed when one of a defendant's crimes is a lesser included offense of the other, even though

the two offenses arguably have sufficient differences in intent and conduct to satisfy the *Whitton* test. With regard to federal law, Todd argues that *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306, 309 (1932), establishes the same rule—that a defendant can never be convicted of two offenses when one is a lesser included offense of the other.

### Federal Double Jeopardy Law

■ The double jeopardy clause of the Fifth Amendment, made applicable to the states by the Fourteenth Amendment, *Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969), prohibits a government from twice putting a defendant in jeopardy for the "same offense". The Supreme Court has interpreted this clause to embody two different protections for criminal defendants. First, the clause contains a protection against successive prosecutions; it prohibits the government from trying a defendant twice for the same offense (regardless of whether the first trial ended in conviction or acquittal). Second, the clause contains a protection against double punishment; it prohibits the government from convicting and sentencing a defendant twice for what amounts to the same offense, even though that single offense might be divided into ostensibly separate offenses in the charging document and in the court's judgement of conviction. *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969), *modified on other grounds, Alabama v. Smith*, 490 U.S. 794, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989). For a good discussion of this topic, see Judge Charles E. Moylan's double jeopardy exegesis in *Mauk v. State*, 91 Md.App. 456, 605 A.2d 157 (1992).

■ In *Blockburger*, the United States Supreme Court developed a test for determining whether two offenses are the "same offense" for double jeopardy purposes. *Blockburger*, 284 U.S. at 304, 52 S.Ct. at 182. Under the *Blockburger* test, the elements of the two offenses are compared: if each offense requires proof of an element that the other does not, then the offenses are separate; but if one offense encompasses all the elements of the other (that is, if the two

offenses stand in the relationship of greater and lesser included), then, for double jeopardy purposes, they are deemed the same offense. *Blockburger,* 284 U.S. at 304, 52 S.Ct. at 182. *See also Brown v. Ohio,* 432 U.S. 161, 165–66, 97 S.Ct. 2221, 2225–26, 53 L.Ed.2d 187 (1977).

The *Blockburger* test seemingly provided a simple method for ascertaining the requirements of the federal double jeopardy clause. However, in a series of later cases, the Supreme Court held that, at least in instances when all the charges against a criminal defendant are combined at a single trial (so that the protection against successive prosecutions is not involved), the role of the double jeopardy clause is limited to protecting a defendant against receiving more punishment than the legislature intended. *See United States v. Halper,* 490 U.S. 435, 450, 109 S.Ct. 1892, 1903, 104 L.Ed.2d 487 (1989) (The double jeopardy clause only "ensur[es] that the [defendant's] total punishment did not exceed that authorized by the legislature".); *Brown v. Ohio,* 432 U.S. at 165, 97 S.Ct. at 2225 ("[T]he role of the constitutional guarantee is limited to assuring that the [sentencing] court does not exceed its legislative authorization."). .

■ Having adopted this interpretation of the double jeopardy clause, the Supreme Court concomitantly construed the *Blockburger* test as being only a tool of statutory construction—a means of ascertaining legislative intent. If a legislature indicates that it wishes cumulative punishment for two offenses, then the Federal Constitution allows cumulative punishment even though the two offenses might be the "same" under the *Blockburger* test. This limited role of *Blockburger* was clarified by the Supreme Court's decisions in two cases: *Whalen v. United States,* 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980), and *Missouri v. Hunter,* 459 U.S. 359, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983).

*Whalen* involved a District of Columbia prosecution for rape and felony murder committed during the rape; the defendant was convicted of both offenses and received cumulative punishment for these two crimes. He appealed, contending that his dual punishment for both felony murder and the underlying felony violated the double jeopardy clause. *Whalen,* 445 U.S. at 685–86, 100 S.Ct. at 1434.

The Supreme Court declared that "the question whether [a defendant's] punishments ... are unconstitutionally multiple cannot be resolved without determining what punishments the Legislative Branch has authorized." *Whalen,* 445 U.S. at 688, 100 S.Ct. at 1436. The Court continued:

[I]f Congress has not authorized cumulative punishments for rape and for an unintentional killing committed in the course of rape, ... the petitioner has been impermissibly sentenced. The dispositive question, therefore, is whether Congress did so provide.

*Whalen,* 445 U.S. at 688–89, 100 S.Ct. at 1436.

■ The Court interpreted a portion of the District of Columbia Code, § 23–112 (1973), as expressing Congress's intention to prohibit consecutive sentences whenever two offenses would be considered the "same offense" under the *Blockburger* test. *Whalen,* 445 U.S. at 690–93, 100 S.Ct. at 1437–38. The Court then ruled that, under the *Blockburger* test, the District of Columbia's felony-murder statute defined the "same offense" as any of its six underlying felonies. *Whalen,* 445 U.S. at 693–94, 100 S.Ct. at 1439.[4] Thus, the Court held, the defendant in *Whalen* had unlawfully been subjected to multiple punishment. However, the Court took some pains to emphasize the limited nature of its decision—to stress that its decision rested on statutory grounds:

Congress is clearly free to fashion exceptions to the rule it chose to enact in § 23–112 [limiting consecutive sentences].

4. When interpreting the criminal law that Congress has enacted to govern the District of Columbia, the Supreme Court is free to interpret the federal statutes without regard to the rulings of the lower federal courts—different from the normal rule in which the Supreme Court is "barred from reviewing a state court's interpretation of a state statute". *Whalen,* 445 U.S. at 687–88, 100 S.Ct. at 1435.

A court, just as clearly, is not. Accordingly, notwithstanding the arguments advanced by the Government in favor of imposing consecutive sentences for felony murder and for the underlying felony, we do not speculate about whether Congress, had it considered the matter, might have agreed. It is sufficient for present purposes to observe that a congressional intention to change the general rule of § 23–112 for the circumstances here presented nowhere clearly appears.

*Whalen,* 445 U.S. at 695, 100 S.Ct. at 1439.

The statutory basis of the *Whalen* decision was confirmed three years later in *Missouri v. Hunter,* 459 U.S. at 365–370, 103 S.Ct. at 678–79. *Hunter* involved a defendant who had been convicted at a single trial of both armed robbery and "armed criminal action", an offense defined by the Missouri legislature as "commit[ting] any felony ... by, with, or through the use, assistance, or aid of a dangerous or deadly weapon". *Hunter,* 459 U.S. at 362, 103 S.Ct. at 676.

Even though the Missouri statute defining "armed criminal action" explicitly provided that "[t]he punishment imposed pursuant to this [statute] shall be in addition to any punishment provided by law for the crime committed by, with, or through the use, assistance, or aid of a dangerous or deadly weapon," *id.,* the Missouri Court of Appeals reversed Hunter's conviction for armed criminal action. Relying on a previous decision of the Missouri Supreme Court deciding the same issue [5], the Missouri Court of Appeals held that, under the *Blockburger* test, "armed criminal action" was the same offense (for double jeopardy purposes) as the underlying felony of armed robbery, and therefore the Missouri legislature had no authority to order cumulative punishment for the two crimes. *Hunter,* 459 U.S. at 362–63, 103 S.Ct. at 676.

The United States Supreme Court reversed the Missouri court's decision, declaring that the Missouri court's ruling "manifests a misreading of our cases on the meaning of the Double Jeopardy Clause of the

Fifth Amendment". *Hunter,* 459 U.S. at 365, 103 S.Ct. at 677.

Because [Hunter] has been subjected to only one trial, it is not contended that his right to be free from multiple trials for the same offense has been violated. Rather, the Missouri court vacated [his] conviction for armed criminal action because of the statements of this Court that the Double Jeopardy Clause also "protects against multiple punishments for the same offense". *North Carolina v. Pearce*[.] Particularly in light of recent precedents of this Court, it is clear that the Missouri Supreme Court has misperceived the nature of the Double Jeopardy Clause's protection against multiple punishments. With respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended.

*Hunter,* 459 U.S. at 365–66, 103 S.Ct. at 678 (citation omitted).

Returning to its decision in *Whalen,* the Court stated that it was "clear ... that the result in *Whalen* turned on the fact that the Court saw 'no clear indication of contrary legislative intent.'" *Hunter,* 459 U.S. at 367, 103 S.Ct. at 678. The Court then quoted its decision in *Albernaz v. United States,* 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981), where the Court held that cumulative punishments could be imposed for conspiracy to import marijuana and conspiracy to distribute marijuana:

The *Blockburger* test is a "rule of statutory construction," and because it serves as a means of discerning congressional purpose *the rule should not be controlling where, for example, there is a clear indication of contrary legislative intent.*

. . . .

The question of what punishments are constitutionally permissible is no different from the question of what punishments the Legislative Branch intended to be imposed. *Where Congress intended, as it*

---

5. *See Sours v. State,* 603 S.W.2d 592 (Mo.1980), *cert. denied,* 449 U.S. 1131, 101 S.Ct. 953, 67

L.Ed.2d 118 (1981).

*did here, to impose multiple punishments, imposition of such sentences does not violate the Constitution.*

*Hunter,* 459 U.S. at 367–68, 103 S.Ct. at 679 (quoting *Albernaz,* 450 U.S. at 340 & 344, 101 S.Ct. at 1143 & 1145) (emphasis by the *Hunter* court).

The United States Supreme Court recognized that the Missouri Supreme Court had "construed the two statutes at issue as defining the same crime" under the *Blockburger* test, and the Supreme Court further recognized that it was "bound to accept the Missouri court's construction of that State's statutes". *Hunter,* 459 U.S. at 368, 103 S.Ct. at 679. "However," the Supreme Court declared, "we are not bound by the Missouri Supreme Court's legal conclusion that these two statutes violate the Double Jeopardy Clause, and we reject its legal conclusion." *Id.*

Our analysis and reasoning in *Whalen* and *Albernaz* lead inescapably to the conclusion that simply because two criminal statutes may be construed to proscribe the same conduct under the *Blockburger* test does not mean that the Double Jeopardy Clause precludes imposition, in a single trial, of cumulative punishments pursuant to those statutes. *The rule of statutory construction noted in Whalen is not a constitutional rule requiring courts to negate clearly expressed legislative intent. Thus far, we have utilized that rule only to limit a federal court's power to impose convictions and punishments when the will of Congress is not clear.* Here, the Missouri Legislature has made its intent crystal clear. Legislatures, not courts, prescribe the scope of punishments.

*Hunter,* 459 U.S. at 368, 103 S.Ct. at 679 (emphasis added).

Federal courts confronting habeas corpus attacks on state criminal judgements now recognize that the constitutionality of multiple convictions and punishments at a single trial depends on the intention of the state legislature. *Birr v. Shillinger,* 894 F.2d 1160, 1161–62 (10th Cir.1990) (per curiam), *cert. denied,* 496 U.S. 940, 110 S.Ct. 3224, 110 L.Ed.2d 671 (1990); *Banner v. Davis,* 886 F.2d 777, 780 (6th Cir.1989); *Gillespie v. Ryan,* 837 F.2d 628, 630–32 (3rd Cir.1988), *cert. denied,* 488 U.S. 833, 109 S.Ct. 90, 102 L.Ed.2d 66 (1988); *Fallada v. Dugger,* 819 F.2d 1564, 1572–73 (11th Cir.1987); *Deloach v. Wainwright,* 777 F.2d 1524, 1525–26 (11th Cir.1985).

■ Thus, under *Hunter,* the question of whether Todd's dual conviction for robbery and felony murder violates the federal double jeopardy clause is to be answered by asking another question: Did the Alaska legislature intend for defendants to be separately punished for both felony murder and the underlying felony?[6]

Todd asserts that the *Hunter* analysis has been altered by the Supreme Court's decision in *United States v. Dixon,* —— U.S. ——, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993). We believe that Todd has misinterpreted *Dixon.*

*Dixon* involved two defendants who had each been prosecuted for contempt of court: one defendant (Dixon) had been found in contempt for violating the terms of his bail release by committing a new crime (possession of cocaine with intent to distribute); the other defendant (Foster) had been found in contempt for violating a restraining order by assaulting his wife, by threatening on three other occasions to injure her, and by assaulting her with intent to kill. In each case, after the defendant had been punished for contempt of court, the government sought to prosecute him for the underlying crime or crimes that led to his contempt conviction. *Dixon,* —— U.S. at —— – ——, 113 S.Ct. at 2853–54. By a 5 to 4 vote, the Supreme

---

6. Because *Hunter* dealt with a state statute that included an express cumulative punishment provision, the *Hunter* decision might arguably be read to require that, before multiple punishments can be imposed for offenses that are "the same" under *Blockburger,* the legislature's intention to impose cumulative punishment must be "clearly" expressed. However, as can be seen from the cases discussed in the next section, most state courts have adopted a more liberal interpretation of *Hunter;* they read *Hunter* to mean that the Federal Constitution allows multiple punishment whenever normal methods of statutory interpretation reveal a legislative intention to allow cumulative punishment for the two offenses.

Court ruled that Dixon's drug prosecution and one of the charges brought against Foster (the charge of simple assault) violated the federal double jeopardy clause.

Todd argues that the Supreme Court's resolution of *Dixon* shows that he can not be prosecuted for both felony murder and robbery. He analogizes the felony murder charge against him to the contempt of court charges in *Dixon,* since they both required proof of an underlying crime. Todd construes *Dixon* to mean that whenever one criminal charge requires proof of another underlying crime, a defendant can not be prosecuted for both crimes. However, the facts and the text of *Dixon* do not support Todd's interpretation.

Like the Court's previous decision in *Whalen,* the *Dixon* case arose in the District of Columbia. Thus, as in *Whalen,* the Supreme Court in *Dixon* had the authority to interpret the federal statutes at issue in the appeal and to apply the *Blockburger* test as the rule of construction. Two members of the court (Scalia and Kennedy) resolved *Dixon* on this statutory basis.

Justices Scalia and Kennedy believed that Dixon's drug possession charge and Foster's simple assault charge were barred by the *Blockburger* rule that two criminal offenses are presumptively the "same offense" for double jeopardy purposes if the elements of one are completely subsumed in the elements of the other. Dixon had, as a condition of his release, been ordered not to commit any criminal offense. To prove that Dixon had violated this condition, the government alleged and proved that Dixon had possessed cocaine with intent to distribute. Foster had been under a restraining order prohibiting him from "molest[ing], assault[ing], or in any manner threaten[ing] or physically abus[ing]" his wife. —— U.S. at ——, 113 S.Ct. at 2854. In one of its later five charges against Foster, the government alleged and proved that Foster had assaulted his wife. Justices Scalia and Kennedy held that Dixon's act of drug possession and Foster's act of simple assault were completely subsumed in the elements of the government's proof in the two defendants' contempt prosecutions; thus, the defendants' later prosecutions for

these underlying crimes were barred. For this same reason, however, Justices Scalia and Kennedy concluded that the four other assault charges brought against Foster were *not* barred by the double jeopardy clause, since these charges alleged aggravated assault, and proof of those charges required proof of additional elements (intent to kill, or a threat to kidnap or injure). —— U.S. at ———— ——, 113 S.Ct. at 2858–59.

Three other members of the court (White, Stevens, and Souter) believed that the double jeopardy clause barred Dixon's drug prosecution and *all* of Foster's assault prosecutions—not because of *Blockburger*'s rule of statutory interpretation, but because of the other prohibition contained in the double jeopardy clause: the bar on successive prosecutions arising from the same conduct. Justice White wrote:

[The government's] second, more powerful, argument [in support of the defendants' convictions] is that contempt and the underlying substantive crime constitute two separate offenses for they involve injuries to two distinct interests, the one the interest of the court in preserving its authority, the other the public's interest in being protected from harmful conduct. This position finds support in Justice Blackmun's partial dissent [—— U.S. at ———— ——, 113 S.Ct. at 2879–2881], and is bolstered by reference to numerous decisions acknowledging the importance and role of the courts' contempt power. [citations omitted] [This argument] cannot lightly be dismissed. Indeed, we recognized in *Young [v. United States ex rel. Vuitton et Fils,* 481 U.S. 787, 800, 107 S.Ct. 2124, 2134, 95 L.Ed.2d 740 (1987)] that contempt "proceedings are not intended to punish conduct proscribed as harmful by the general criminal laws. Rather, they are designed to serve the limited purpose of vindicating the authority of the court. In punishing contempt, the Judiciary is sanctioning conduct that violates specific duties imposed by the court itself, arising directly from the parties' participation in judicial proceedings." *Id.,* 481 U.S. at 800, 107 S.Ct. at 2134.

The fact that two criminal prohibitions promote different interests may be indicative of legislative intent and, to that extent, important in deciding whether cumulative punishments imposed in a single prosecution violate the Double Jeopardy Clause. *See Missouri v. Hunter*, 459 U.S. 359, 366–368, 103 S.Ct. 673, 678–79, 74 L.Ed.2d 535 (1983). *But the cases decided today involve instances of successive prosecutions* in which the interests of the *defendant* are of paramount concern.

*Dixon*, —— U.S. at ——–——, 113 S.Ct. at 2870–2871 (White, J., concurring) (underlined emphasis added; italicized emphasis in the original). *See also* the concurring opinion of Justice Souter, —— U.S. at ——–——, 113 S.Ct. at 2881–83. Later in his opinion, Justice White declared his view that the double jeopardy clause still allows vindication of both the court's interest in preserving its authority through the contempt power and society's interest in enforcing the criminal law. To act in conformance with the double jeopardy clause,

> judges and prosecutors [should] ensure, where necessary or advisable, that the contempt and the substantive charge be tried at the same time, in which case the double jeopardy issue "would be limited to ensuring that the [defendant's] total punishment did not exceed that authorized by the legislature." *United States v. Halper*, 490 U.S. 435, 450, 109 S.Ct. 1892, 1903, 104 L.Ed.2d 487 (1989).

*Dixon*, —— U.S. at ——, 113 S.Ct. at 2873 (White, J., concurring).

The four remaining members of the court (Rehnquist, joined by O'Connor and Thomas; and Blackmun, writing separately) believed that Dixon's and Foster's later prosecutions were entirely proper and were not barred by either the *Blockburger* rule or the prohibition on successive prosecutions. *Dixon*, —— U.S. at ——–——, 113 S.Ct. at 2865–68 (Rehnquist, C.J., concurring and dissenting), and —— U.S. at ——–——, 113 S.Ct. at 2879–2881 (Blackmun, J., concurring and dissenting).

Returning to the facts of Todd's case, Todd was prosecuted for felony murder and first-degree robbery at the same trial. The various opinions in *Dixon* demonstrate that, for defendants convicted of several offenses at the same trial, *Missouri v. Hunter* retains the allegiance of a clear majority of the Supreme Court as the embodiment of the proper federal double jeopardy analysis.[7] That is, for federal double jeopardy purposes, the question of whether Todd could properly be convicted and sentenced for both robbery and felony murder depends on whether the Alaska legislature intended to allow cumulative punishment for the two offenses.

### Survey of Cases from Other States

State courts are split on the question of whether a defendant can be convicted of both felony murder and the underlying felony. However, the precise contours of this split are hard to gauge. Many of the state court decisions prohibiting dual punishment are premised on a misunderstanding of federal double jeopardy law. These courts believed, erroneously, that the Supreme Court's decisions in *Blockburger, Brown, Whalen,* and *Harris* stood for the rule that the Federal Constitution strictly prohibited state legislatures from punishing a defendant for both felony murder and the underlying felony, even when these two charges were tried at a single trial.[8]

---

**7.** This same distinction between a single trial and successive trials differentiates *Harris v. Oklahoma*, 433 U.S. 682, 97 S.Ct. 2912, 53 L.Ed.2d 1054 (1977), from Todd's case. *Harris* involved a defendant who was tried and convicted for felony murder, then later tried and convicted for armed robbery. *Harris v. State*, 555 P.2d 76, 77–78, 80 (Okla.Crim.App.1976). The Supreme Court summarily reversed Harris's armed robbery conviction, issuing "a three-paragraph *per curiam* [opinion] in an unargued case". *Dixon*, —— U.S. at ——, 113 S.Ct. at 2865 (Rehnquist, C.J., concurring and dissenting). Significantly,

the Supreme Court did not cite *Blockburger* when it reversed Harris's second conviction; rather, the Court cited *Ex parte Nielsen*, 131 U.S. 176, 188, 9 S.Ct. 672, 676, 33 L.Ed. 118 (1889), for the rule that Harris could not be subjected to successive prosecutions.

**8.** *State v. Pizzuto*, 119 Idaho 742, 810 P.2d 680, 694–96 (1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1268, 117 L.Ed.2d 495 (1992), and *Sivak v. State*, 112 Idaho 197, 731 P.2d 192, 205–08 (1986): The Idaho court relied on *Whalen* as a statement of constitutional law rather than as a

Other states have resolved the issue without reaching any question of constitutional law. These states have found that multiple punishments for a greater and a lesser included offense are barred by either a state sentencing statute or by a common-law rule of merger. *Boulies v. People,* 770 P.2d 1274 (Colo.1989) (only one conviction allowed because of a state merger rule); *People v. Raymer,* 662 P.2d 1066, 1068–1070 (Colo. 1983) (construing felony murder as an aggravated form of armed robbery); *State v. Ah Choy,* 70 Haw. 618, 780 P.2d 1097, 1099–1100 (1989) (construing felony murder as an aggravated form of armed robbery, and reasoning that the legislature could not have intended cumulative punishment when the mandatory punishment for murder is life imprisonment); *Swaite v. State,* 272 Ark. 128, 612 S.W.2d 307, 308–09 (1981) (construing state statutes to require merger of the convictions); *Candler v. State,* 266 Ind. 440, 363 N.E.2d 1233, 1243 (1977) (state rule of merger); *State v. Fratzke,* 354 N.W.2d 402, 410 (Minn.1984) (dictum) (discussion based on a state statute). *See also People v. Wilder,* 411 Mich. 328, 308 N.W.2d 112, 116–121 (1981) (deciding the issue on state constitutional grounds, and recognizing that the result under the Federal Constitution might be different).

We now turn to the state court decisions which (1) decide the issue on federal constitutional grounds and (2) recognize that the federal double jeopardy question hinges on the intent of the state legislature. Of these

---

case construing the District of Columbia sentencing statutes. The Idaho court also relied on its previous decision in *State v. Thompson,* 101 Idaho 430, 614 P.2d 970, 973 (1980), where the court erroneously held, relying on *Brown* (a successive prosecution case) that the federal double jeopardy clause uniformly forbids cumulative punishment for a greater and a lesser included offense, even when the charges are combined in a single trial.

*Munson v. State,* 758 P.2d 324, 332 (Okla. Crim.App.1988), *cert. denied,* 488 U.S. 1019, 109 S.Ct. 820, 102 L.Ed.2d 809 (1989): The Oklahoma court decided to address the dual punishment issue even though "this issue was not raised in the trial court or on appeal". The court then erroneously construed *Harris v. Oklahoma* (a successive prosecution case) to flatly prohibit cumulative punishment for both felony murder and the underlying felony, even when the convictions and sentences arise from a single trial.

*State v. Julius,* 185 W.Va. 422, 408 S.E.2d 1, 11–13 (1991): The state conceded that a defendant could not be punished for both felony murder and the underlying felony; the West Virginia court accepted the state's concession, erroneously believing that *Harris v. Oklahoma* was controlling.

*State v. Lane,* 629 S.W.2d 343, 344 (Mo.1982): The Missouri Supreme Court, in a terse decision that relied on *Whalen* and did not discuss legislative intent, ruled that the double jeopardy clause did not allow multiple convictions. In a subsequent appeal involving the same case, the Missouri Court of Appeals attempted to place their supreme court's decision on more sustainable footing: the court of appeals declared that the supreme court had reached its decision "only because the Missouri legislature did not intend to allow conviction of both [offenses]". *Lane v. State,* 778 S.W.2d 769, 772 (Mo.App.1989).

*State v. Jones,* 525 So.2d 1149, 1151 (La.App. 1988): The Louisiana court relied on its supreme court's decision in *State v. Vaughn,* 431 So.2d 763, 766 (La.1983), which erroneously assumed that the *Blockburger* test was a constitutional rule, binding on the states, that defined when cumulative punishment was permissible.

*Commonwealth v. Tarver,* 493 Pa. 320, 426 A.2d 569 (1981): The Pennsylvania court, erroneously believing that *Blockburger* and *Harris* dictated a merger of offenses as a matter of federal constitutional law, overruled its prior decision in *Commonwealth v. Sparrow,* 471 Pa. 490, 370 A.2d 712 (1977), and held that a defendant could not be separately punished for both felony murder and the underlying felony. Seven years later, in *Gillespie v. Ryan,* 837 F.2d 628 (3rd Cir.1988), *cert. denied,* 488 U.S. 833, 109 S.Ct. 90, 102 L.Ed.2d 66 (1988), the Third Circuit "reversed" *Tarver* and resuscitated *Sparrow,* at least for federal habeas corpus purposes. The defendant in *Gillespie* petitioned for federal habeas corpus relief after he was sentenced for both felony murder and an underlying felony. The Third Circuit noted that, in the years since *Tarver* was decided, the United States Supreme Court had clarified that *Blockburger* was simply a rule of construction and that *Harris* was limited to instances of successive prosecutions. *Gillespie,* 837 F.2d at 630–31. The Third Circuit then observed that the Pennsylvania Supreme Court had not re-interpreted state law in *Tarver* but had simply declared the Pennsylvania law to be inconsistent with the Federal Constitution. Because the decision in *Tarver* rested on federal grounds, the Third Circuit ruled that it was free to apply the correct federal law—that is, the court was free to ignore the erroneous result in *Tarver* and, in fact, was obliged to apply Pennsylvania law as it had been interpreted in *Sparrow.* Thus, the Third Circuit concluded, the defendant's multiple punishments were lawful. *Gillespie,* 837 F.2d at 631–32.

courts, the great majority uphold separate punishment for felony murder and the underlying felony.

In *State v. Blackburn*, 694 S.W.2d 934 (Tenn.1985), the Tennessee Supreme Court declared that it had earlier misread *Harris v. Oklahoma* to flatly prohibit dual punishment for felony murder and the underlying felony. *See Briggs v. State (Briggs II )*, 573 S.W.2d 157 (Tenn.1978). The court now recognized that *Harris* was confined to instances in which a defendant had been subjected to successive prosecutions, and that the Federal Constitution allowed cumulative punishment based on convictions at a single trial (if that is what the state legislature intended). *Blackburn*, 694 S.W.2d at 936.

Addressing the issue of whether a defendant could be separately convicted and punished for assault with intent to commit rape and a resulting felony murder, the Tennessee court stated that

neither reason nor authority [supports the rule] that one who commits murder during the perpetration of a felony named [in the felony-murder statute] cannot or should not be convicted and punished for both the offense of murder ... and for the named felony. Nothing in the statutory definitions of [felony] murder ... and of the felonies listed in [the felony-murder statute] indicates a legislative intent that conviction and punishment for both offenses should not be permitted.

*Blackburn*, 694 S.W.2d at 936–37 (quoting *State v. Briggs (Briggs I )*, 533 S.W.2d 290, 292–93 (Tenn.1976)). Noting that the underlying felony statutes and the murder statute "are directed to separate evils", the court concluded that the Tennessee legislature "intended that multiple punishments be imposed on conviction of a defendant for felony murder and the underlying felony." *Id.* at 937.

The Virginia Supreme Court reached the same conclusion in *Fitzgerald v. Commonwealth*, 223 Va. 615, 292 S.E.2d 798 (1982), *cert. denied*, 459 U.S. 1228, 103 S.Ct. 1235, 75 L.Ed.2d 469 (1983). The defendant had been convicted of rape, robbery, and a resulting felony murder. The Virginia court recognized that *Harris* and *Brown* dealt with the prohibition against successive prosecutions,

and that, when a defendant is convicted of both felony murder and an underlying felony at a single trial, the constitutionality of multiple punishment hinges on the intent of the state legislature. *Fitzgerald*, 292 S.E.2d at 809. The court then examined the legislative history of Virginia's felony-murder statute. The court concluded that the Virginia legislature had enacted the felony-murder statute as part of its efforts to re-classify the various types of murder, so that the penalty for each type might more justly reflect its level of culpability. This legislative history, said the court, reflected the legislature's intention to allow cumulative punishment for both the murder and the underlying felony:

The overriding purpose of the murder statutes being gradation, we can divine no legislative intent to eliminate punishment for other offenses included in the murder statutes solely for the purpose of categorizing the murder. The legislature has granted authority for the punishment of rape ... and robbery[.] Moreover, ... the General Assembly has provided, "When any person is convicted of two or more offenses, and sentenced to confinement, such sentences shall not run concurrently, unless expressly ordered by the court." In the face of the current statutory scheme and its legislative history, we can not say that the legislature intended any elimination of [the] underlying sentencing authority for rape ˙and robbery when it modified the murder statutes in 1975, or on any prior occasion.

*Fitzgerald*, 292 S.E.2d at 810 (citations omitted). Moreover, the Virginia court continued, "[a] contrary conclusion would create disorder and anomalous results in punishments" because a defendant convicted of robbery and non-felony second-degree murder (*e.g.*, murder committed knowingly or by an act of extreme recklessness) might well receive a greater sentence of imprisonment than a co-defendant who was convicted of robbery and felony murder (which in Virginia is first-degree murder) arising from the same transaction. *Id.* at 811. For these reasons, the Virginia court concluded, the defendant's separate convictions and punishments for

rape, robbery, and felony murder did not violate the double jeopardy clause. *Id.*

In *State v. Greco,* 216 Conn. 282, 579 A.2d 84 (1990), the Connecticut Supreme Court concluded that its legislature intended separate punishments for felony murder and an underlying felony. The court noted that the legislature had set forth separate punishments in separate statutes for murder and the various predicate felonies, rather than making the penalty for felony murder a multiple or other direct enhancement of the penalties for the underlying felonies. *Id.* The court also noted that the Connecticut legislature had enacted several statutes that limited a defendant's punishment for specified multiple offenses potentially committed in the same transaction: "Since the legislature has shown that it knows how to bar multiple punishments expressly when it does not intend such punishment, the absence of similar language in [the felony-murder statute] provides evidence that the legislature intended cumulative punishment." *Id.* The court then commented upon "the distinct nature of the interests protected by the felony murder, robbery, and burglary statutes":

> An obvious purpose of the felony murder statute, or any murder statute, is to protect human life.... In contrast, the basic rationale [of the robbery statutes] is protection against the terror of forcible taking ..., while the primary rationale of the crime of burglary is protection against invasion of premises likely to terrorize occupants[.] Each of these three statutes penalizes a different type of evil. Since the felony murder statute and the underlying felony statutes are designed to address separate evils, they provide clear evidence that the legislature intended multiple punishments.

*Greco,* 579 A.2d at 91 (citations omitted). Finally, the Connecticut court interpreted the felony-murder statute as representing another method of committing murder, rather than representing an increased penalty provision for the underlying felonies. *Id.* The court concluded, "[o]n the basis ... of the language, structure, and legislative history of [the felony-murder statute], ... that the legislature clearly intended multiple pun-

ishments for felony murder and the underlying predicate offenses of robbery and burglary." *Id.*

*Accord: State v. McCovey,* 803 P.2d 1234 (Utah 1990); *State v. Gonzales,* 245 Kan. 691, 783 P.2d 1239, 1246–49 (1989) (noting the "absurdity" of allowing two criminal convictions if the injured victim lives but allowing only one conviction if the victim dies); *People v. Williams,* 195 Cal.App.3d 398, 240 Cal. Rptr. 717, 719–723 (1987), *cert. denied,* 488 U.S. 832, 109 S.Ct. 89, 102 L.Ed.2d 65 (1988); *Talancon v. State,* 102 Nev. 294, 721 P.2d 764 (1986) (legislative intent to allow cumulative punishment inferred from the fact that the felony-murder statute protects distinct interests from the predicate felony statutes, and from the fact that the legislature had, through inaction, apparently acquiesced in the Nevada court's earlier decision allowing cumulative punishment); *State v. Enmund,* 476 So.2d 165 (Fla.1985); *State v. Close,* 191 Mont. 229, 623 P.2d 940, 949–51 (1981).

Not all the state decisions support multiple punishment. In *Cook v. State,* 841 P.2d 1345 (Wyo.1992), the Wyoming court recognized that the question was one of legislative intent, but the court concluded that the Wyoming legislature had intended only one punishment for felony murder and the underlying felony. The Wyoming court interpreted felony murder to be, in essence, the most aggravated form of robbery. The court stated, "[a]s the threat of or use of violence against the person increases, the severity of legislatively authorized punishment increases." *Id.* at 1352. The court also relied on the fact that, under Wyoming law, the punishment for murder is either death or life in prison without possibility of parole—sentences that apparently obviate the need for any additional punishment. *Id.* at 1353.

### The Alaska Supreme Court's Decision in Tuckfield

As discussed above, Todd relies on the Alaska Supreme Court's decision in *Tuckfield* for the proposition that the double jeopardy clause is invariably violated when a defendant is "convict[ed] of both an offense and a lesser included offense, unless the convictions arise from separate conduct." *Tuck-*

*field,* 621 P.2d at 1352. As can be seen from the preceding discussion of federal double jeopardy law, this statement from *Tuckfield* is erroneous. Under the Federal Constitution, defendants who are tried on several charges at a single trial can be separately convicted and punished for both a greater offense and a lesser included offense if the legislature has authorized this cumulative punishment.

Moreover, the statement from *Tuckfield* is directly at odds with the Alaska Supreme Court's decision in *Jacinth v. State,* 593 P.2d 263 (Alaska 1979), a case decided less than two years before. The defendant in *Jacinth* had burned down an "adult" theater, unintentionally causing the death of a man who lived on the premises. Jacinth was convicted of both second-degree arson and manslaughter under the former criminal code. *Id.* at 264. He argued that the double jeopardy clause prohibited his receiving separate convictions for a single criminal act. The supreme court rejected this argument, holding that arson and manslaughter were sufficiently distinct (both in terms of the conduct and intent they involved and in terms of the societal interests they protected) to support separate convictions and sentences under *Whitton.* *Jacinth,* 593 P.2d at 266–67.

Under the facts in *Jacinth,* and using the "cognate" approach to lesser included offenses adopted by the Alaska Supreme Court in *Elisovsky,* Jacinth's crimes of manslaughter and arson stood in the relation of greater offense and lesser included offense. Under Alaska's former criminal code (the law governing Jacinth's case), an unintentional homicide committed in the perpetration of a felony was manslaughter. The supreme court clarified this "felony-manslaughter" rule in *Keith v. State,* 612 P.2d 977 (Alaska 1980):

> In *Gray v. State,* 463 P.2d 897, 906 (Alaska 1970), we held that a killing done in the perpetration of a felony, but without a specific intent or purpose to kill, constitutes manslaughter. This is, in a sense, a

felony-manslaughter rule and appears to be a rather distinctive homicide scheme. *Keith,* 612 P.2d at 987–88.[9]

Jacinth's act of willfully setting the building on fire (arson) was the unlawful act that caused the unintended homicide, thus establishing the crime of manslaughter under Alaska's former "felony-manslaughter" rule. Nevertheless, despite this relationship between the manslaughter and the arson, the supreme court upheld Jacinth's separate convictions (and consecutive sentences) for these two crimes.

The *Tuckfield* opinion does not mention *Jacinth,* and the supreme court has not had later occasion to discuss the relationship of these two cases. However, if we are to reconcile these two decisions, *Tuckfield* can not be read as broadly as Todd wishes.

The precise holding in *Tuckfield* is that a defendant can not be separately convicted for both an assault with intent to commit rape and the completed rape arising from the same assault. Examined under the criteria announced in *Whitton,* this holding is all but self-evident and is completely consistent with the supreme court's decision in *Jacinth* that separate convictions are permitted for arson and manslaughter. Looking at the facts of *Tuckfield,* the result in that case appears to be a straightforward application of the rule now codified in AS 11.31.140(c), that "[a] person may not be convicted on the basis of the same course of conduct of both [an attempt and] the crime that is the object of the attempt".

It is *Tuckfield*'s broader language—the statement that separate convictions are never permitted for a greater and a lesser included offense—that creates the tension with *Jacinth.*

*Tuckfield* cites two cases for the proposition that a greater and a lesser included offense can never support two convictions. The first, *In re Dennis B.,* 18 Cal.3d 687, 135 Cal.Rptr. 82, 85, 557 P.2d 514, 517 (1976), is miscited. In the cited passage from *Dennis B.,* the California Supreme Court speaks of

---

9. *Keith* went on to hold that an unintended killing committed during the perpetration of any crime, whether felony or misdemeanor, was

manslaughter under Alaska's former criminal code. *Id.* at 988–89.

the rule that the double jeopardy clause bars *successive prosecutions* for a greater and a lesser offense. *Compare Harris v. Oklahoma*, 433 U.S. 682, 97 S.Ct. 2912, 53 L.Ed.2d 1054 (1977), discussed in footnote 7. The second case cited by the supreme court, *People v. Brown*, 185 Colo. 272, 523 P.2d 986, 988 (1974), holds that a defendant can not be convicted of both possession of narcotics for sale and simple possession of narcotics when both charges arise from a single act of possession—again, a readily apparent result under a *Whitton* analysis, and a holding that does not speak to the kind of situation presented in *Jacinth*, where the two crimes (arson and manslaughter) involve substantial differences in intent and conduct and address significantly different societal interests.

After the United States Supreme Court's decision in *Missouri v. Hunter*, it is clear that *Tuckfield*'s broader implications are wrong. There is no universal rule barring separate convictions and sentences for a greater offense and a lesser included offense, so long as these two convictions arise from a single trial. Even though the elements of one offense may completely subsume the elements of another, so that the two crimes are the "same offense" under the *Blockburger* test, the federal double jeopardy clause allows separate convictions and punishments for both the greater offense and the lesser included offense if this is what the legislature intended.[10]

*Tuckfield* correctly resolved the situation presented in that case—the situation in which the government seeks to convict a defendant, based on a single criminal act, of both an attempt or an assault intended to accomplish a specific crime and, additionally, the completed crime itself. However, *Tuckfield*'s statement that separate convictions are never allowed for greater and lesser in-

cluded offenses is erroneous. Accordingly, we must re-examine our decision in *Hughes*.

In *Hughes*, this court held that a defendant could not be convicted of both attempted robbery and manslaughter for a homicide that resulted from the robbery attempt. This holding was perceived to be dictated by the supreme court's decision in *Tuckfield*. This court wrote that, because "an underlying felony is a lesser-included offense of a felony homicide[,] ... *Tuckfield* requires us to find that convicting [a defendant] of both [a predicate felony] and [felony] manslaughter violate[s] [the] double jeopardy [clause]". *Hughes*, 668 P.2d at 844–45.

We now perceive that the answer to the multiple punishment issue is not governed by *Tuckfield*. Instead, the answer must be found by investigating the legislature's intent in enacting the robbery and felony-murder statutes, and by examining these two statutes under the criteria established in *Whitton*.

### Did the Alaska Legislature Intend to Authorize Cumulative Punishment for Felony Murder and a Predicate Felony?

As pointed out above, Alaska's former criminal code did not follow the common-law felony-murder rule. Instead, under pre–1980 Alaska law, all forms of murder—including felony murder—required proof of an intent to kill. An unintentional homicide occurring during the commission of a felony (or a misdemeanor) was manslaughter. *Keith*, 612 P.2d at 987–88.

The drafters of Alaska's current criminal code wrote the second-degree murder statute, AS 11.41.110(a), to single out certain types of unintentional homicide that would have been manslaughter under prior law, changing the classification of these homicides

---

**10.** In fact, the Alaska Supreme Court acknowledged this tenet of double jeopardy law in *State v. Dunlop*, 721 P.2d 604, 606 n. 6 (Alaska 1986):

The United States Supreme Court has repeatedly stated that "the question whether punishments imposed by a court after a defendant's conviction upon criminal charges are unconstitutionally multiplied cannot be resolved without determining what punishments the Legislative Branch has authorized;" *Whal-*

*en v. United States; Jeffers v. United States*, 432 U.S. 137, 97 S.Ct. 2207, 53 L.Ed.2d 168 (1977); *Bell v. United States*, 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905 (1955). Other jurisdictions concur. *See State v. Miranda*, 3 Ariz.App. 550, 416 P.2d 444, 451 (1966); *State v. Myers*, 171 W.Va. 277, 298 S.E.2d 813, 816 (W.Va. 1982); *State v. Rabe*, 96 Wis.2d 48, 291 N.W.2d 809, 819 (1980).

to murder. In particular, with respect to felony murder, the drafters wrote:

> In considering the Revised Code's approach to the felony murder statute, it must be recalled that the purpose of a felony murder rule is to deter all killings during the commission of felonies which involve a high potential for violence. By holding the felon liable for an unintended and even [an] accidental death occurring in the course of or in furtherance of a felony, the rule provides a powerful incentive not to commit inherently dangerous crimes, or at the very least to plan and carry out such crimes with increased regard for physical dangers.
>
> For all practical purposes, Alaska does not now [i.e., in 1977] have a felony murder rule. In *Gray,* ... the Supreme Court held that an "intent to kill" is a necessary element of felony murder under existing law. Consequently, an accidental killing occurring during the commission of an enumerated felony does not render the actor guilty of felony murder under the existing statute.
>
> Subsection (a)(3) specifically eliminates the *Gray* requirement that a felon "purposely" kill during the commission of an enumerated felony. In doing so, the Revised Code brings Alaska's felony murder rule into conformance with the rule in 48 states.
>
> Existing Alaska law lists the crimes of rape, arson, robbery and burglary as felonies sufficient to trigger the application of the felony murder rule. The [proposed] felony murder provision in subsection (a)(3) of the Revised Code only lists those degrees or forms of arson, burglary and sexual assault which create a serious risk of violence. Because all degrees of rob-

bery involve the use or threatened use of physical force, the commission of any degree of robbery is sufficient to bring into play the felony murder rule.

*Alaska Criminal Code Revision, Tentative Draft,* Part 1, pp. 27–29.

 The drafters' commentary to AS 11.41.110(a)(3) demonstrates that the intent of AS 11.41.110(a)(3) was to change the degree of homicide in situations like the one presented in *Jacinth.* Under the revised code, if a defendant commits or tries to commit one of the listed predicate felonies and an unintentional death results, the homicide is classified as murder, not just manslaughter, and the penalty is concomitantly more severe.

 The drafters' commentary illustrates another important point. Under Alaska law, felony murder is not an aggravated form of robbery, arson, sexual assault, or any of the other enumerated predicate felonies. Rather, felony murder was intended to be an aggravated form of manslaughter. Under the statute, the defendant's intent to commit one of the listed felonies constitutes the culpable mental state that makes any resulting homicide murder, even if the homicide was unintended. In essence, the defendant's intent to commit one of the listed dangerous felonies constitutes a heightened form of recklessness that raises the classification of a resulting homicide from manslaughter to murder. *See State v. Enmund,* 476 So.2d 165, 168–69 (Fla.1985) (Shaw, J., concurring). This is analogous to the common-law felony-murder rule, under which the defendant's intent to engage in a dangerous felony constituted the malice required for murder. *R. Perkins & R. Boyce, Criminal Law* (3rd ed. 1982), p. 71.[11]

---

11. Compare the analysis of Chief Judge Bazelon in *United States v. Greene,* 489 F.2d 1145 (D.C.Cir.1973), *cert. denied,* 419 U.S. 977, 95 S.Ct. 239, 42 L.Ed.2d 190 (1974):

> At common law, homicides were divided into two categories, murder and manslaughter, with murder requiring a showing of "malice." Any homicide committed in the course of a felony was considered murder because malice could be implied from the commission of the felony. When homicides were further subdivided by statute into first degree murder, sec-

ond degree murder[,] and manslaughter, the doctrine of felony murder was preserved, and the underlying felony was viewed as providing the "premeditation" and "deliberation" otherwise required for first degree murder, as well as malice, where necessary.

> Given this rationale for the felony murder doctrine, it strains credulity to hold that the underlying felony merges with the felony murder. The statute proscribing the underlying felony—robbery, for example—is designed to protect a wholly different societal interest from

Alaska law most clearly calls for separate convictions and punishments when the victim of the homicide is someone other than the victim of the underlying felony—as when a bystander or a police officer is killed during a robbery. Under such circumstances, Alaska precedent clearly supports separate convictions and punishments for the felony and the homicide. *See State v. Dunlop*, 721 P.2d 604 (Alaska 1986) (a defendant who kills or injures two or more people by a single reckless act commits a separately punishable homicide or assault upon each victim); *Cooper v. State*, 595 P.2d 648 (Alaska 1979) (a defendant who threatens or terrorizes two or more people by a single assaultive act commits a separately punishable assault upon each victim). But even when the defendant's crimes involve only one victim, we conclude that the Alaska legislature intended to authorize separate convictions and punishments for the underlying felony and the resulting homicide.

Nothing in the legislative history of Alaska's felony-murder statute, and nothing in any subsequent legislation, indicates legislative dissatisfaction with the result in *Jacinth*—the Alaska Supreme Court's decision that a single criminal act (arson) will support separate convictions and punishments for both the felony and a resulting homicide. In fact, the legislative history of the felony-murder statute affirmatively indicates that the legislature intended for the defendant to receive separate convictions. This legislative intent is manifested by AS 11.41.115(c) and the legislature's commentary to that section.

AS 11.41.115(c) provides a limited exception to the felony-murder rule codified in AS 11.41.110(a)(3). The statute reads:

(c) A person may not be convicted of murder in the second degree under AS 11.41.110(a)(3) [the felony-murder statute] if the only underlying crime is burglary, the sole purpose of the burglary is a crimi-

nal homicide, and the person killed is the intended victim of the defendant. However, if the defendant causes the death of any other person, the defendant may be convicted of murder in the second degree under AS 11.41.110(a)(3). Nothing in this subsection precludes a prosecution for or conviction of murder in the first degree or murder in the second degree under AS 11.41.110(a)(1) or (2) or of any other crime, including manslaughter or burglary.

The commentary to this statute states that it was intended to work a "merger" of the homicide and the underlying burglary:

Subsection (c) was referred to at Criminal Law Subcommission meetings as the "felony-murder merger doctrine." In considering this extremely limited exemption from the felony-murder rule, it must be recalled that the purpose of the rule is to diminish the risk of unintentional or even accidental killings during the commission of violent felonies. One of these felonies, burglary in the first degree, occurs when a person enters a dwelling with intent to commit a crime. If a person commits burglary in the first degree by breaking into a house with intent to kill the occupant, the felony-murder rule would have no deterrent effect. Permitting a conviction for murder under the felony-murder rule in this circumstance would also have the effect of preventing the jury from considering whether the defendant acted in the "heat of passion."

The Code does not permit a conviction for felony-murder in this situation; the felony is said to "merge" with the homicide. Of course, the defendant can still be charged with first or second degree murder for the intentional killing. The effect of the felony-murder merger doctrine is to prohibit a second-degree murder conviction solely on proof that the defendant

the felony murder statute, which is intended to protect against homicide. The underlying felony is an essential element of felony murder only because without it the homicide might be second degree murder or manslaughter.
*Greene*, 489 F.2d at 1168–69.

Judge Bazelon's analysis is in accord with the view taken by the Alaska Supreme Court in *Padie v. State*, 557 P.2d 1138 (Alaska 1976). Referring

to the three degrees of criminal homicide under Alaska's former criminal code—first-degree murder (which included felony murder), second-degree murder, and manslaughter—the court stated, "All three of these offenses require the same physical act, the unlawful killing of a human being. *The difference is in the mental state of the perpetrator.*" *Padie*, 557 P.2d at 1141 (emphasis added).

committed first degree burglary by entering a dwelling with intent to kill the occupant.

1978 Senate Journal 1399, Supp. No. 47 (June 12), p. 12. *See also* the Criminal Code Revision Subcommission's commentary to the originally proposed version of this statute, TD 11.41.110(d), found in the Alaska Criminal Code Revision, Tentative Draft, Part 1, pp. 32–33.

From this legislative commentary, two things are apparent. First, even in the situation described in the statute (a burglary committed for the purpose of killing someone) when the felony-murder rule does not apply, the legislature still envisioned that the defendant might be separately convicted of murder (first-degree murder) or manslaughter and, additionally, the underlying burglary. *See Mead v. State*, 489 P.2d 738, 742–43 (Alaska 1971) (allowing separate convictions for burglary and the motivating theft). Second, because the legislature enacted a special provision to merge the two potential offenses in this specific situation, the legislature must have intended that defendants in other felony-murder situations would be subject to conviction and punishment for both the homicide and the underlying felony.

We note that the Alaska legislature has, in other sections of the criminal code, expressly prohibited multiple punishment for potentially separate crimes. *See* AS 11.31.140(b) (prohibiting more than one punishment for attempt when two or more attempts are made to commit the same crime), and AS 11.31.140(c) (prohibiting conviction for both attempt/solicitation and the completed crime). Given the legislature's demonstrated willingness to enact statutes that limit the number of convictions under particular circumstances, the legislature's failure to require a general merger of convictions for felony murder and the predicate felonies is further evidence of a legislative intent to allow multiple convictions.

Robbery and felony murder are directed to distinct societal interests. As the legislative commentary points out, felony murder is a

grade of homicide, a crime whose primary rationale is the protection and vindication of human life. Robbery, on the other hand, punishes assaultive conduct whose aim is the taking of property. The rationale of robbery is the protection of people against "the terror of forcible taking [of property]". *State v. Greco*, 216 Conn. 282, 579 A.2d 84, 91 (1990).

It is true that the Alaska legislature now classifies robbery among the "offenses against the person" in chapter 41 of the criminal code, accentuating its assaultive aspect. Nevertheless, the theft aspect of robbery can not be ignored. Both the common law and Alaska's criminal law (both the former criminal code and the current one) have always treated the crime of robbery as more serious than the sum of its parts. Among assaults, those assaults motivated by theft have always been viewed as among the most serious, and the resulting crime of robbery has always been punished more severely than either assault or theft, or even the combination of both. For instance, under Alaska law, a person who menaces another person with a dangerous weapon commits third-degree assault, a class C felony. AS 11.41.220(a)(1) and (b). A person who attempts to take property from another commits no more than a class C felony. (If the property is worth less than $25,000, the attempted theft is a misdemeanor.) AS 11.46.120–150 and AS 11.31.100(d). Yet an armed assault motivated by an intent to take property is first-degree robbery, a class A felony, even if the attempted taking is unsuccessful. AS 11.41.500(a).[12]

For all these reasons, we conclude that the Alaska legislature intended to authorize separate convictions and cumulative punishment for felony murder and a predicate felony.

*Are Cumulative Punishments Consistent with the Alaska Constitution as Interpreted in Whitton?*

Under *Missouri v. Hunter*, our determination of the Alaska legislature's intent to authorize cumulative punishments concludes

---

**12.** Alaska's former criminal code also provided a significantly greater punishment for armed robbery than the punishments for theft and assault

with a dangerous weapon. *Whitton*, 479 P.2d at 304–05.

our double jeopardy inquiry under the Federal Constitution. For state constitutional purposes, however, we must decide whether the legislature's intention is consistent with *Whitton v. State.*

*Whitton* directs us to consider "the basic interests of society to be vindicated or protected" by the two statutes. *Whitton v. State*, 479 P.2d at 312. As we have already discussed in more detail, the crimes of robbery and felony murder address distinct evils. The robbery statute is aimed at protecting people from being terrorized by an assault whose aim is the taking of property. Felony murder, on the other hand, is an aggravated form of manslaughter, a statute addressed to the protection and vindication of human life. As the drafters of the revised criminal code wrote, if the increased punishment for an unintended homicide does not deter people from committing dangerous felonies, it will at least encourage criminals "to plan and carry out such crimes with increased regard for physical dangers". *Tentative Draft*, Part 1, p. 28.

*Whitton* further directs us to consider "the broad objectives of [the] criminal law[,] such as punishment of the criminal for his crime, rehabilitation of the criminal, and prevention of future crimes". *Id.* at 312. The purpose of the felony-murder statute is to deter people from committing the listed dangerous felonies or, failing that, to encourage felons to be extremely careful when committing these felonies. The increased deterrence provided by the potential additional charge of felony murder implements one of the major purposes of the criminal law. *See State v. Dunlop*, 721 P.2d at 610.

Finally, we look to the legal precedent provided by *Jacinth v. State.* In *Jacinth*, the supreme court resolved an analogous question: whether *Whitton* allows separate punishments for arson and manslaughter arising from the same act. Although Alaska's criminal code now declares that an unintended homicide arising from a dangerous felony is murder, not manslaughter, this change in the law does not appear to alter *Jacinth* 's analysis of the *Whitton* issue.

We therefore hold that the Alaska Constitution allows separate convictions and punishments for felony murder and the underlying felony, even though, under Alaska's cognate approach, the underlying felony may be a lesser included offense of felony murder. We overrule *Hughes v. State* to the extent that it contradicts our holding in this case.

The judgement of the superior court is AFFIRMED.